LEE UNLAND, APPELLANT, V. CITY OF LINCOLN, NEBRASKA,
APPELLEE.

530 N.W.2d 624

Filed April 21, 1995.   No. S-93-736.

Thom K. Cope, of Bailey, Polsky, Cope, Wood & Knapp, for appellant.

William F. Austin, Lincoln City Attorney, and Don W. Taute for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

FAHRNBRUCH, J.

Claiming that he was constructively discharged from his employment with the City of Lincoln without due process, Lee Unland petitioned the district court for Lancaster County to order his reinstatement as a police officer.

The district court held that Unland received the procedural due process to which he was entitled and dismissed Unland's petition. Unland appealed that determination.

We affirm the holdings of the district court in all respects.

## STANDARD OF REVIEW

This is an action alleging breach of an employment contract and a denial of procedural due process. A suit under an employment contract is an action at law, and an appellate court will overturn factual findings of the trial court only if they are clearly wrong. *Hammond v. City of Broken Bow*, 239 Neb. 437, 476 N.W.2d 822 (1991).

As to questions of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review. *Winslow v. Hammer, ante* p. 418, 527 N.W.2d 631 (1995); *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994).

In reviewing a judgment awarded in a bench trial, the appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246

Neb. 411, 520 N.W.2d 189 (1994).

## FACTS

Unland was hired by the City of Lincoln (City) as a police officer in 1978. On September 1, 1988, the City entered into a written labor agreement with the Lincoln Police Union, of which Unland was a member. Article 8 of the agreement provides that discipline and discharge of police officers shall occur only for cause. Unland held his position with the police department until July 1990.

John Becker, then a captain with the Lincoln Police Department, testified that in early July 1990, problems with Unland's performance in a robbery investigation were brought to his attention. Becker testified that Sgt. Roger D. Schmidt, Unland's first line supervisor, informed Becker that a member of his investigation team had been assigned to duplicate the investigation of the July 1990 robbery case because Unland had not completed the necessary reports.

Becker testified that on July 19, he and Schmidt met with Unland to discuss the deficiencies in the robbery investigation. Becker testified that Unland was informed of the duplicate investigation and told that the failure to complete reports in the investigation was a violation of policy and procedure.

Becker testified that on July 24, he again met with Unland and specifically outlined the direction of the discipline he wanted to follow in the matter. Within the previous 6 months, Unland had received 1– and 3–day suspensions for performance deficiencies. Becker testified that he specifically told Unland that he would be recommending to Police Chief Allen Curtis that Unland be terminated because of the prior disciplinary situations and that he did not see the City "going backwards" in the disciplinary process.

Unland testified that he had a discussion with Schmidt and Becker. He testified that he was questioned about the robbery investigation and the timeliness of specific reports. Unland said that he did not recall any discussion regarding the earlier disciplinary matters. Unland also testified that he told Becker that "you . . . think I shouldn't work here."

Unland received a written notice, dated July 24, 1990, that a

"Personnel Action Report" had been filed by his first line supervisor and team commander. The notice advised Unland that the report would be reviewed at a hearing to be held July 27, at which Unland's attendance was required.

Becker also testified that on either July 25 or 26, he met with Unland's attorney, J. David Thurber. Becker testified that the two discussed the reasons for the upcoming July 27 hearing and his recommendation for Unland's termination.

Thurber testified that when he and Becker met, Becker indicated that he would be recommending Unland's termination because of the pattern of performance deficiencies shown by Unland, his prior disciplinary history, and the current circumstances involving the robbery investigation. Thurber also testified that he reviewed various reports Becker had in his possession concerning the factual circumstances of the current complaint against Unland. Thurber further testified that he told Unland of his discussions with Becker and that termination of his employment was a "real possibility in this case."

Thurber testified that prior to the July 27 hearing, he also contacted Curtis, and that Curtis indicated his concerns about Unland's prior history and the possibility of the termination of Unland's employment.

On July 27, Unland and Thurber attended a hearing over which Chief Curtis presided. Curtis, Becker, and Thurber testified that Curtis began the meeting by asking if anyone wanted him to review the facts and allegations of the situation. Allen Berndt, Lincoln Police Union president, agreed that the accounts of these witnesses reflected what actually occurred at the meeting. It was Unland's testimony that he did not recall specifically what Curtis' general opening comments were as to why they were conducting the hearing. Unland testified that at the hearing, he gave a brief statement on his own behalf regarding why he felt he was "a good police officer and could continue to be a good police officer . . . ."

Thurber testified that he stated on behalf of his client that it was not necessary to have the facts reviewed. Thurber further testified that he presented a proposal as an alternative to Unland's termination. Curtis testified that Thurber's proposal for Unland included a 30-day suspension, 1 year's probation,

and termination without any right to appeal in the event that Unland violated any police procedures during his probation period.

Chief Curtis did not accept Thurber's proposal, and suspended Unland for 15 days, at the end of which period his employment would be terminated.

Unland testified that after the hearing was adjourned, he asked his attorney if it was still possible for him to resign. Unland explained at trial that "a firing would not reflect well on a resume, and a resignation would be a better item to approach another employer." Thurber talked to Curtis after the meeting and asked if he would accept Unland's resignation instead of terminating his employment. Curtis testified that he answered in the affirmative, and on July 31, Curtis received Unland's resignation letter.

On August 5, Unland filed a notice of appeal with the personnel director of the City pursuant to the grievance procedures set forth in article 9, § 5, of the agreement between the City and the Lincoln Police Union. The City denied Unland's request for a hearing because he had resigned.

On February 26, 1991, Unland filed this action in district court against the City, requesting, inter alia, damages for loss of wages and reinstatement as a member of the Lincoln Police Department. Unland alleged he was not given notice of the charges against him "prior to his constructive discharge, nor was he given an opportunity to respond." Unland claimed he was terminated from his position without due process of law and in breach of the express employment agreement between him and the City.

The trial court found that Unland had a property interest in his continued employment with the City and that under the police union contract he could be dismissed only for cause. The trial court also found that Unland (1) had notice of the charges against him through conversations with his supervisory officers and with his attorney, (2) had notice of the hearing and had an opportunity to present his case, and (3) was afforded procedural due process. The trial court ordered Unland's petition dismissed.

Unland appealed to the Nebraska Court of Appeals. Pursuant

to our authority to regulate the caseloads of the appellate courts, this case was removed from the Court of Appeals' docket to this court's docket.

## ASSIGNMENTS OF ERROR

Unland claims that the district court erred in ruling that (1) pretermination due process was adequate and (2) no posttermination due process was required.

## ANALYSIS

### PRETERMINATION DUE PROCESS

Public employees may have a property right in continued employment. [Citations omitted.] When such property rights exist, they are created not by the Constitution, but by an independent source such as state law. [Citations omitted.] If an employee has a property right in continued employment, he may not be discharged from his job without due process.

*Riggins v. Bd. of Regents of University of Nebraska*, 790 F.2d 707, 710 (8th Cir. 1986), citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), and *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

In this case, the City concedes in its brief that Unland had a property interest in his job by virtue of article 8 of the labor agreement between the City and the Lincoln Police Union. Article 8 provides that police officers may be discharged only for good cause. The issue, then, is whether Unland received the process that was due him in connection with his 15–day suspension followed by dismissal at the end of that period.

It is fundamental to established principles of due process that as a prerequisite to an intentional deprivation of a protected property interest, the government must provide some notice and an opportunity for hearing appropriate to the nature of the case. *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950). In *Cleveland Board of Education v. Loudermill, supra*, the U.S. Supreme Court held that a public employee with a property interest in continued employment who is given posttermination administrative procedures must

nevertheless, before termination, be given (1) oral or written notice of the charges against him, (2) an explanation of the employer's evidence, and (3) an opportunity to present his side of the story.

A pretermination procedure functions only as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545–46. The pretermination process need not resolve the propriety of the discharge. *Loudermill, supra.* All process that is due is provided by a pretermination opportunity to respond, coupled with posttermination procedures. *Id.* See, also, *Linton v. Frederick County Bd. of County Com'rs*, 964 F.2d 1436 (4th Cir. 1992); *Duchesne v. Williams*, 849 F.2d 1004 (6th Cir. 1988); *Morton v. Beyer*, 822 F.2d 364 (3d Cir. 1987); *Riggins, supra.*

We now examine whether the City afforded Unland the three elements of pretermination due process set forth in *Loudermill.* As to the first element, Unland claims that he did not have any notice of the specific charges against him or that termination of his employment was a possibility. The record clearly reflects that prior to the July 27 hearing, Unland did receive notice of specific charges against him and that termination of his employment was a possibility.

Under the second element of *Loudermill*, an employee, prior to termination of his employment, is entitled to an explanation of the employer's evidence against the employee. Unland claims that he did not know that previous disciplinary actions against him would be considered. However, Becker's testimony that he told Unland that he would be recommending termination to Curtis based on Unland's previous disciplinary history was sufficient for the trial court to find that Unland had notice that his disciplinary history would be used as evidence against him at his pretermination hearing.

Moreover, the record also reveals that the discussions between Becker and Thurber, Unland's attorney, were sufficient to give Unland both notice of the charges against him and an explanation of the City's evidence against him. The general rule is that notice to, or knowledge of facts by, an attorney is notice

to, or knowledge of, his client. *State v. McKenna*, 228 Neb. 29, 421 N.W.2d 19 (1988); *City of Hastings v. Jerry Spady Pontiac-Cadillac, Inc.*, 212 Neb. 137, 322 N.W.2d 369 (1982).

Unland argues that his former attorney should not have testified at the trial to his conversations with Unland, due to the attorney–client privilege. Unland objected to his former attorney's testimony at trial. However, this court has held in *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849 (1985), that a litigant is not permitted to thrust his lack of knowledge into litigation as a foundation or condition necessary to sustain a claim against another while simultaneously retaining the attorney–client privilege to frustrate proof of knowledge negating the very foundation or condition necessary to prevail on the claim asserted. Unland's alleged lack of knowledge is central to this case. Unland may not assert the attorney–client privilege as to conversations between him and Thurber concerning whether Unland had notice of the charges or an explanation of the City's evidence against him.

We now consider whether Unland had an opportunity to tell his side of the story. Unland himself testified that at the hearing, he gave a "brief speech on why I felt I was—had been a good police officer and could continue to be a good police officer . . . ." At the hearing, through his attorney, Unland also presented an alternative discipline proposal which outlined discipline that did not include termination. The record reflects that Unland had a meaningful opportunity to respond to the charges and the evidence against him.

On the basis of the evidence presented at trial, it cannot be said that the trial court was clearly wrong in finding that Unland was accorded procedural due process of law in relation to his termination.

### POSTTERMINATION HEARING

We now address Unland's claim that the trial court erred in ruling that no posttermination due process was required.

Article 9, § 5, of the police union's labor agreement provides that in the event of *dismissal*, an employee may appeal to the personnel board of the City. The labor agreement does not provide for an appeal in the event of a voluntary resignation.

Although Unland submitted a letter of resignation which was accepted, he argues that his resignation was not voluntary and that he was constructively discharged. The record reflects that Unland approached his attorney of his own accord and asked if he could resign in lieu of being terminated. Unland testified that he felt it would be better to have a resignation rather than a termination on his employment record. Thus, the trial court was not clearly wrong in finding that Unland's letter of resignation waived any right to appeal the City's decision to suspend Unland and terminate his employment.

## CONCLUSION

The trial court was not clearly wrong in finding from the evidence and the reasonable inferences therefrom that Unland received all the procedural due process to which he was entitled before he was terminated as a Lincoln police officer and that Unland, by voluntarily resigning as a police officer, waived his right to a posttermination hearing. The trial court's dismissal of Unland's petition must be affirmed.

AFFIRMED.