J.C. PENNEY COMPANY, INC., APPELLEE, V.
M. BERRI BALKA, TAX COMMISSIONER OF THE
STATE OF NEBRASKA, ET AL., APPELLANTS.
577 N.W. 2d 283

Filed April 23, 1998.   No. S-97-071.

Don Stenberg, Attorney General, and L. Jay Bartel for appellants.

William E. Peters, of Peters & Chunka, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

In seeking review by the Nebraska Court of Appeals, the respondent-appellant, State of Nebraska, through the Department of Revenue and the Tax Commissioner, M. Berri Balka, asserted, in summary, that the district court erred in reversing their assessment of a use tax against the petitioner-appellee, J.C. Penney Company, Inc. The parties thereafter petitioned to bypass the Court of Appeals. We granted the petitions and, finding merit in the assigned error, reverse the judgment of the district court.

## II. SCOPE OF REVIEW

Resolution of the case depends upon the interpretation of a statute, a matter which presents a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Martindale v. Weir, ante* p. 517, 577 N.W.2d 287 (1998); *Hoiengs v. County of Adams, ante* p. 64, 574 N.W.2d 498 (1998).

## III. FACTS

J.C. Penney is a Delaware corporation with its principal offices and place of business formerly located in New York,

New York, and now located in Dallas, Texas. It sells merchandise which it illustrates and describes in various catalogs, producing three major catalogs (spring/summer, fall/winter, and Christmas) and various smaller sale or specialty catalogs.

J.C. Penney's retail division operates retail stores in all 50 of the United States, including 24 stores in Nebraska. Its catalog division conducts a mail order catalog business and operates separately from the retail division. The catalog division maintains catalog sales locations within J.C. Penney retail stores and at separate locations not connected with a retail store. At the catalog sales locations, customers can order, pick up, and return catalog merchandise.

In order to sell its catalog merchandise, the catalog division sends catalogs to Nebraskans. The catalogs advertise merchandise that is identical to that sold in the retail stores, but also contain a selection of merchandise not available in the stores. In addition to picturing and describing the merchandise, the catalogs also contain ordering instructions, order forms, and shipping and delivery information. Customers may order catalog merchandise by utilizing and mailing the order form contained in the catalog, placing a telephone order from home, or visiting a catalog sales location and using the "special" telephone provided by the catalog division to call the distribution center, which is located outside Nebraska.

The catalog division in New York selected the persons to whom catalogs would be sent. The catalog division designed the catalogs in New York and sent the layouts to printers in Indiana, South Carolina, and Wisconsin. The catalogs sent to Nebraska during the relevant audit period were printed by R.R. Donnelley & Sons Company in Indiana and South Carolina and by Perry Printing in Wisconsin. Pursuant to its contract with R.R. Donnelley, the catalog division supplied the paper, shipping wrappers, and address labels for the catalogs, and R.R. Donnelley provided the ink and binding materials. The catalog division paid for the production, preparation, fabrication, printing, imprinting, and binding of catalogs that were delivered to Nebraska customers. With respect to the passage of title, the contract between J.C. Penney and R.R. Donnelley provided:

[R.R.] Donnelley shall deliver completed work to carriers at [R.R.] Donnelley's plant of manufacture in accordance with [J.C.] Penney's shipping instructions. Title and possession shall pass to [J.C.] Penney upon delivery FOB trucks or railroad cars at such plant of manufacture. Except for manufacturing waste, title to all paper furnished by [J.C.] Penney in accordance with this Agreement shall, at all times, remain with [J.C.] Penney.

The catalogs at issue are "direct mail catalogs" which are sent directly to the homes of potential Nebraska customers, without charge to the recipient. J.C. Penney's catalog division determined, at its New York office, how these catalogs were to be shipped. The printer in Indiana delivered the majority of the catalogs it printed to a common carrier in Warsaw, Indiana, which then transported them to U.S. Post Office facilities in Nebraska, where the catalogs were sent by fourth-class mail directly to the addressees designated on the labels; shipped a small portion of the catalogs by fourth-class mail from the Warsaw Post Office to the addressees designated on the labels; and delivered the remaining catalogs to a common carrier in Warsaw, which then transported them to U.S. Post Offices in Nebraska where they were mailed, along with a detached address card, to Nebraska addressees indicated on the cards. The printers in South Carolina and Wisconsin mailed the small catalogs via third-class mail directly to the Nebraska addressees. J.C. Penney arranged for the transportation of all catalogs and paid the common carriers and the U.S. Post Office directly for all shipping costs and postal fees.

If a catalog could not be delivered to the designated addressee, the catalog division directed, based on the type of catalog involved, that the catalog either be delivered to the current resident or be returned to the catalog division. The addressees were free to use or discard the catalogs at will.

J.C. Penney has not paid a sales or use tax to any other state upon the producing, preparing, fabricating, processing, printing, imprinting, and binding of the catalogs upon which the department assessed a use tax in the instant case.

## IV. ANALYSIS

The State urges that the district court erred in holding that J.C. Penney's distribution of direct mail catalogs sent via common carrier, the U.S. mail, or both to Nebraska residents did not constitute a "use" of tangible personal property subjecting the catalogs to a tax under Neb. Rev. Stat. § 77-2703 (Reissue 1990).

Section 77-2703(1) imposes a sales tax "upon the gross receipts from all sales of tangible personal property sold at retail in this state . . . ." Section 77-2703(2) imposes a use tax "on the storage, use, or other consumption in this state of tangible personal property purchased, leased, or rented from any retailer . . . for storage, use, or other consumption in this state . . . ." Neb. Rev. Stat. § 77-2702(20) (Cum. Supp. 1988) defines "use" as "the exercise of any right or power over tangible personal property incident to the ownership or possession of that tangible personal property . . . ."

The State claims not that J.C. Penney's actions constitute "storage" or "other consumption" of the catalogs in Nebraska, but that J.C. Penney is "using" the catalogs in Nebraska. Thus, the issue becomes whether J.C. Penney is exercising any right or power over the catalogs incident to the ownership or possession of that property in Nebraska.

Although the U.S. Supreme Court has not addressed this precise issue, it held in *D. H. Holmes Co. v. McNamara*, 486 U.S. 24, 108 S. Ct. 1619, 100 L. Ed. 2d 21 (1988), that Louisiana's imposition on a Louisiana corporation of a use tax upon direct mail catalogs printed out of state and mailed to residents in Louisiana did not violate the commerce clause. The Court accepted the Louisiana Court of Appeals' construction of Louisiana's tax statute and ruled only on the constitutional question. However, in discussing whether there was a "nexus" between the distribution and Louisiana, the Court noted:

> Holmes' contention that it lacked sufficient control over the catalogs' distribution in Louisiana to be subject to the use tax verges on the nonsensical. Holmes ordered and paid for the catalogs and supplied the list of customers to

whom the catalogs were sent; any catalogs that could not be delivered were returned to it. Holmes admits that it initiated the distribution to improve its sales and name recognition among Louisiana residents. Holmes also has a significant presence in Louisiana, with 13 stores and over $100 million in annual sales in the State. [Citation omitted.] The distribution of catalogs to approximately 400,000 Louisiana customers was directly aimed at expanding and enhancing its Louisiana business.

486 U.S. at 32-33.

We therefore conclude that there is no federal constitutional impediment to Nebraska's imposing a use tax under the circumstances presented. The question simply is whether Nebraska has elected to do so.

The judicial opinions of other states have not reached a consensus. Among the cases refusing to impose a use tax under similar circumstances are *May Dept. Stores v. Director of Revenue*, 748 S.W.2d 174 (Mo. 1988); *Modern Merchandising v. Dept. of Revenue*, 397 N.W.2d 470 (S.D. 1986); *Mart Realty, Inc. v. Norberg*, 111 R.I. 402, 303 A.2d 361 (1973); *Sharper Image v Dep't of Treasury*, 216 Mich. App. 698, 550 N.W.2d 596 (1996), *appeal denied* 454 Mich. 867, 560 N.W.2d 636 (1997); *Department of Revenue v. J.C. Penney Co.*, 108 Wis. 2d 662, 323 N.W.2d 168 (Wis. App. 1982); *District of Columbia v. W. Bell & Co., Inc.*, 420 A.2d 1208 (D.C. App. 1980); *Bennett Bros., Inc. v. State Tax Com'n*, 62 A.D.2d 614, 405 N.Y.S.2d 803 (1978).

However, the State argues that *D. H. Holmes Co., supra*, marks a turning point after which every court considering this issue, with the exception of *Sharper Image, supra*, has held that delivering direct mail catalogs or other advertising materials printed out of state to state residents is a "use," subjecting the catalogs to use tax. For example, *Sharper Image Corp. v. Miller*, 240 Conn. 531, 692 A.2d 774 (1997); *American Exp. Travel v. Tax Com'n*, 128 Idaho 902, 920 P.2d 921 (1996); *J.C. Penney Co., Inc. v. Olsen*, 796 S.W.2d 943 (Tenn. 1990); *Service Merchandise v. DOR*, 188 Ariz. 414, 937 P.2d 336 (Ariz. App. 1996); *Talbots, Inc. v. Schwartzberg*, 928 P.2d 822 (Colo. App. 1996); *Collins v. J. C. Penney Co.*, 218 Ga. App. 405, 461

S.E.2d 582 (1995); *Comfortably Yours, Inc. v. Director, Div. of Taxation*, 272 N.J. Super. 540, 640 A.2d 862 (1994); *Sharper Image Corp. v. Comptroller of the Treasury*, 1993 WL 226248 (Md. Tax Feb. 18, 1993).

We have written that

> [t]he general theory behind the sales and use taxes is to impose a tax on each item of property, unless specifically excluded, at some point in the chain of commerce. [Citation omitted.] If the item is purchased in Nebraska, the sales tax applies. If the item is purchased outside of Nebraska, the use tax applies.

*Interstate Printing Co. v. Department of Revenue*, 236 Neb. 110, 119, 459 N.W.2d 519, 526 (1990).

Here, as a part of its business of selling products in Nebraska, J.C. Penney placed its catalogs in the stream of commerce and directed to whom they were to be delivered and what should be done with catalogs which were not deliverable to the designated addressee. Under those circumstances, we must conclude that J.C. Penney exercised in Nebraska a right or power over the catalogs it caused to be prepared and owned. It therefore used the catalogs in Nebraska, as the term "use" is defined in § 77-2702(20).

We are not unmindful that in the process of adopting the 1991 revisions to the Nebraska Revenue Act of 1967, the Legislature rejected language which would have expressly included in the definition of "other consumption" the delivery of "catalogs and other advertising materials, within this state to a person other than the purchaser . . . ." First Reading, L.B. 773, Revenue Committee, 92d Leg., 1st Sess. (Jan. 23, 1991); Legislative Journal, 92d Leg., 1st Sess. 1370 (Mar. 27, 1991). However, that circumstance does not alter the fact that J.C. Penney's activities with respect to its catalogs fall within the purview of use, as defined by the relevant statute.

## V. JUDGMENT

Accordingly, as first noted in part I, the judgment of the district court is reversed.

REVERSED.