LOUIS C. MARTIN, APPELLANT, V.
NEBRASKA DEPARTMENT OF PUBLIC INSTITUTIONS, APPELLEE.
584 N.W. 2d 485

Filed September 8, 1998. No. A-97-326.

Patricia A. Knapp, of Polsky, Cope & Knapp, for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HANNON, IRWIN, and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Dr. Louis C. Martin filed a petition for review in the district court for Lancaster County seeking review of a decision of the Nebraska State Personnel Board (Board) that affirmed the investigatory suspension and termination of his employment by the Nebraska Department of Public Institutions (DPI). The district court affirmed the decision of the Board. For the reasons stated below, we reverse, and remand with directions.

## II. FACTUAL BACKGROUND

Martin is a psychiatrist, who was employed with DPI beginning in 1989. At all times relevant to this case, Martin was the chief of service for the Forensic Mental Health Services at DPI.

On October 23, 1995, DPI gave Martin a "Personal Action Notification," stating that he was being placed on investigatory suspension. On this same date, Martin was also given a "Written Notice of Allegation(s)" (notice). The notice alleged that Martin had acted insubordinately in sending a memo on October 1 to certain superiors, stating that Bill Zinn, the chief executive officer for DPI, and Dr. Somasundaram Rajendran, the clinical director at the Lincoln Regional Center, who was Martin's supervisor, had committed " 'incompetent and reckless administrative acts.' " The notice also alleged that Martin had failed to fulfill basic job responsibilities as the chief of service

for the Forensic Mental Health Services, particularly by failing "to provide facilitative leadership and overall management" to the Forensic Mental Health Services. The notice advised Martin that the allegations could lead to disciplinary action being taken against him. The notice also provided the date and time, October 30 at 1 p.m., for a meeting with Dr. Steven Higgins, medical services director for DPI. As medical services director, Higgins is responsible for, among other things, appointing and removing for cause the heads of the administrative subdivisions within the Division of Medical Services. See Neb. Rev. Stat. § 83-1,149(2) (Reissue 1994).

Within a few days thereafter, a meeting was held with Martin, Martin's attorney, and Higgins. An investigator retained by DPI to conduct an independent investigation regarding the allegations against Martin was also present. Following the meeting, the investigator began her investigation, which included reviewing documents and interviewing DPI employees. Following her investigation, the investigator prepared a report setting forth her findings. After receiving the investigator's report, Higgins decided to dismiss Martin from his employment. In the notice of dismissal, Higgins stated that Martin's memorandum of October 1, 1995, was "insubordinate" and that Martin had failed to fulfill basic job responsibilities as the chief of service of the Forensic Mental Health Services. Higgins set out the evidence supporting his decision. Higgins' decision to terminate Martin's employment was based on both insubordination and failure to fulfill basic job responsibilities. Martin received the written notification of his dismissal on January 4, 1996.

Thereafter, Martin filed a grievance alleging that DPI lacked just cause to terminate his employment and that the process followed by DPI in terminating his employment was inadequate. The director of DPI denied Martin's grievance. Martin appealed the director's decision to the Board.

An evidentiary hearing was held before a hearing officer on April 30, 1996. In a detailed 13-page decision, the hearing officer ultimately concluded that termination of Martin's employment was not for just cause. She found insufficient evidence to support the allegation that Martin had failed to fulfill basic job

responsibilities. In addition, she found that Martin did not receive adequate due process regarding the insubordination allegation, because prior to his termination, Martin was not given an opportunity to respond to evidence gathered during the subsequent investigation on which Higgins relied in terminating Martin's employment. Nevertheless, she ultimately concluded that there was sufficient evidence to support the insubordination allegation. The hearing officer recommended that DPI's termination of Martin's employment be overruled; that DPI's finding of insubordination for statements in the October 1, 1995, memorandum be sustained; that Martin be placed back in his position of chief of service and receive backpay; and that appropriate discipline be imposed regarding the insubordination allegation.

The record shows that prior to the Board's meeting of August 16, 1996, at which time Martin's appeal was to be considered, the hearing officer's recommended decision, the parties' briefs, and Martin's "appeal form" were forwarded to the Board. At its August 16 meeting, the Board concluded, based upon its review of the record, that DPI had sufficiently proved the allegations of insubordination and failure to fulfill basic job responsibilities. The Board found that Martin had been dismissed for just cause. The Board "adopted [the recommended decision of the hearing officer] to the extent that it [was] consistent with [the Board's decision] and rejected [it] to the extent that it [was] inconsistent . . . ."

On August 29, 1996, Martin filed a petition for review in the district court pursuant to the Administrative Procedure Act, Neb. Rev. Stat. § 84-901 et seq. (Reissue 1994 & Cum. Supp. 1996). The district court affirmed the decision of the Board. This appeal timely followed.

### III. ASSIGNMENTS OF ERROR

Martin's assigned errors may be summarized and restated as follows: (1) The Board erroneously determined whether to accept or reject the recommendations of the hearing officer without examining the record; (2) the Board's order is inadequate, because it does not set forth specific findings regarding its decision to reject a portion of the hearing officer's recom-

mendations; and (3) Martin's termination from employment was unlawful, because he was not provided adequate due process of law prior to his termination.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Proceedings for review of a final decision of an administrative agency shall be to the district court, which shall conduct the review without a jury de novo on the record of the agency. § 84-917(5)(a); *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997); *George Rose & Sons v. Nebraska Dept. of Revenue*, 248 Neb. 92, 532 N.W.2d 18 (1995). A final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. § 84-918(3); *Wolgamott, supra*; *Piska v. Nebraska Dept. of Soc. Servs.*, 252 Neb. 589, 567 N.W.2d 544 (1997). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Wolgamott, supra*; *George Rose & Sons, supra*. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *J.C. Penney Co. v. Balka*, 254 Neb. 521, 577 N.W.2d 283 (1998); *Martindale v. Weir*, 254 Neb. 517, 577 N.W.2d 287 (1998).

### 2. THE BOARD'S DECISION

Martin generally assigns and argues that the decision of the Board was deficient for two reasons: The decision was made without a review of the record of the hearing officer, and the Board did not adequately set forth its findings of fact and conclusions of law. We agree.

Pursuant to § 84-915, every decision rendered by an agency in a contested case "shall be in writing or stated in the record and shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact." If an agency agrees with the recommended decision, the agency

may simply adopt or affirm it. 2 Am. Jur. 2d *Administrative Law* § 373 (1994); 73A C.J.S. *Public Administrative Law and Procedure* § 141 (1983). However, an agency must articulate reasons for its rejection of a recommended decision. 2 Am. Jur. 2d, *supra*, § 374; 73A C.J.S., *supra*. In addition, when an agency chooses not to adopt the findings and recommendations of its hearing officer, it must examine the record independently. In the absence of evidence to the contrary, it will be presumed that the deciding officials have so considered the record. 73A C.J.S., *supra*. See, also, *Cooper v. State Bd. of Medical Examiners*, 35 Cal. 2d 242, 217 P.2d 630 (1950); *Coggins v. Public Employee Relations Board*, 2 Kan. App. 2d 416, 581 P.2d 817 (1978).

We cannot conclude from the record before us that the Board examined the record prior to its decision. The record before us shows that the items forwarded to the Board prior to its decision at its meeting of August 16, 1996, included the hearing officer's recommended decision, the parties' briefs, and Martin's appeal form. It does not appear that the bill of exceptions from the proceedings before the hearing officer was forwarded to the Board. In fact, it appears the bill of exceptions was not even in existence at the time the Board made its decision. The certificate in the bill of exceptions certifying that the bill of exceptions was complete is dated September 26, 1996, which is over a month after the Board met and rendered its decision.

We also cannot conclude that the Board adequately set forth its findings of fact and conclusions of law as required by § 84-915. In her 13-page decision, the hearing officer found that there was insufficient evidence to support the allegation that Martin had failed to fulfill basic job responsibilities. In arriving at this finding, the hearing officer detailed the evidence regarding the progress of the Forensic Mental Health Services in implementing the recommendations of the "Ray" report and Martin's role in the implementation. (The Ray report is 13 recommendations for change issued in April 1995 and adopted by the Lincoln Regional Center management team.) In its decision, the Board concludes that there was sufficient evidence that Martin was insubordinate and that he had failed to fulfill basic job responsibilities. In addition, the Board's decision states:

"[T]he recommended decision of the Hearing Officer is adopted to the extent that it is consistent with this motion and rejected to the extent that it is inconsistent with the motion . . . ." The Board's decision fails to set forth findings of fact to support its conclusion, contrary to that of the hearing officer, that Martin had failed to fulfill basic job responsibilities.

In light of the Board's failure to review the record and the requirement that it provide findings of fact and conclusions of law, the Board's decision affirming DPI's dismissal of Martin does not conform to the law. Therefore, the Board erred in this regard.

### 3. PROCEDURAL DUE PROCESS

■ Next, we address whether Martin was provided adequate due process of law prior to his termination from employment. Martin argues that the pretermination hearing was inadequate, because he was not provided with an explanation of the evidence gathered during the investigation or an opportunity to rebut this evidence. The determination of whether the procedures afforded an individual comport with the constitutional requirements for procedural due process presents a question of law. *Billups v. Nebraska Dept. of Corr. Servs. Appeals Bd.*, 238 Neb. 39, 469 N.W.2d 120 (1991).

■ The parties do not dispute that Martin had a property interest in his continued employment. See *Unland v. City of Lincoln*, 247 Neb. 837, 530 N.W.2d 624 (1995). As a prerequisite to terminating the employment of an employee with a property right in continued employment, the employer must provide notice and an opportunity for a hearing appropriate to the nature of the case. *Unland, supra*; *Ackerman v. Metropolitan Community College*, 6 Neb. App. 536, 575 N.W.2d 181 (1998). Before termination of employment, an employee with a property right in continued employment must be given oral or written notice of the basis for the termination, an explanation of the employer's evidence, and an opportunity to present his or her side of the story. *Unland, supra*; *Ackerman, supra*. See, also, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). The above pretermination procedures coupled with posttermination procedures for review provide an employee the process that is due. *Id.*

In *Gaines v. New York State Div. for Youth*, 213 A.D.2d 894, 623 N.Y.S.2d 936 (1995), the Appellate Division of the New York Supreme Court was confronted with an issue similar to that before us. In *Gaines*, an employee was notified that her employment would be terminated on a specified future date due to her being absent from work for 1 year on disability leave. After the employee advised that she was medically fit to return to work, the employer sent the employee for a medical examination. After the examination, the physician prepared a letter, which he forwarded to the employer, opining that the employee was not physically fit to return to work. The employee was not provided with a copy of this letter, and her employment was then terminated. The employee was also not provided a posttermination hearing. The *Gaines* court affirmed the lower court's conclusion that the employee was terminated from her employment without due process of law, because she was not provided pretermination notice and an opportunity to respond, or a posttermination hearing. The court stated: "[The employee], however, was denied an opportunity to respond to [the] letter to [the employer] . . . . Clearly [the employee] was denied an explanation and an opportunity to respond prior to discharge . . . ." 213 A.D.2d at 896, 623 N.Y.S.2d at 938.

In the case before us, an independent investigation of the charges was undertaken at the request of DPI. According to the record, the investigation occurred after a meeting was held during the last week of October 1996 with Martin, Martin's attorney, and Higgins. The district court found that another meeting was held November 17. However, there is nothing in the record to support the district court's finding. Even if such a meeting was held as found by the district court, the investigation was not completed on November 17. Information gathered during the investigation was relied upon in Higgins' determinations that Martin was insubordinate, that Martin had failed to fulfill basic job responsibilities, and that dismissal was the appropriate discipline. This information was unavailable to Martin prior to termination of his employment.

Based upon our review of the record, we conclude that Martin was not provided an adequate explanation of the evidence that was gathered in the investigation and relied upon by

Higgins or an opportunity to respond. Martin was denied due process, because the pretermination meeting was conducted prior to the investigation and because evidence learned during the investigation was used as part of the basis for Martin's termination from employment.

We must determine the effect of such a violation of pretermination due process. In *Loudermill, supra,* the U.S. Supreme Court affirmed the Court of Appeals' reversal of the district court's determination that Loudermill's due process rights had not been violated and remanded for further proceedings. We note that there is authority for the proposition that a failure to provide sufficient pretermination process may be corrected by a curative posttermination hearing in which due process is provided. See *McKinney v. Pate,* 20 F.3d 1550 (11th Cir. 1994), *cert. denied* 513 U.S. 1110, 115 S. Ct. 898, 130 L. Ed. 2d 783 (1995). See, also, *Glenn v. Newman,* 614 F.2d 467 (5th Cir. 1980); *City of North Pole v. Zabek,* 934 P.2d 1292 (Alaska 1997); *Maxwell v. Mayor &c. of the City of Savannah,* 226 Ga. App. 705, 487 S.E.2d 478 (1997); *Ross v. Medical Univ. of South Carolina,* 328 S.C. 51, 492 S.E.2d 62 (1997). These jurisdictions reason that a pretermination deprivation of procedural due process does not ripen or become complete unless the State refuses to make available a means to remedy the deprivation. *McKinney, supra; Maxwell, supra.*

Other jurisdictions conclude that if the employment of an employee is terminated in violation of the employee's due process rights, the availability of posttermination procedures does not cure the violation. See *Stallworth v. City of Evergreen,* 680 So. 2d 229 (Ala. 1996), *cert. denied* 519 U.S. 1007, 117 S. Ct. 509, 136 L. Ed. 2d 399. See, also, *Cotnoir v. University of Maine Systems,* 35 F.3d 6 (1994); *Abraham v. Pekarski,* 728 F.2d 167 (3d Cir. 1984), *cert. denied* 467 U.S. 1242, 1045 S. Ct. 3513, 82 L. Ed. 2d 822; *Schultz v. Baumgart,* 738 F.2d 231 (7th Cir. 1984); *Murray v. Dept. of Revenue & Taxation,* 543 So. 2d 1150 (La. App. 1989). These jurisdictions reason that if the employment of an employee is terminated without first providing the employee due process protections, the constitutional deprivation is complete. *Cotnoir, supra; Schultz, supra.*

 We find the authority providing that posttermination proceedings do not cure violations of pretermination due process to be better reasoned. As aptly stated by one court:

> To hold that a procedurally adequate post-termination hearing remedies the deprivation inflicted on a discharged employee by an earlier decision based on a pretermination hearing completely devoid of due process of law would be to render the United States Supreme Court's holding in *Cleveland Board of Education* a nullity. Furthermore, no matter how fair and adequate the procedures at the post-termination hearing may be, the initial decision made after the pretermination hearing inevitably will have diminished significantly the employee's chances of prevailing at the post-termination hearing.

*Stallworth*, 680 So. 2d at 235. Furthermore, the U.S. Supreme Court has made it clear that postdeprivation remedies do not provide due process if predeprivation remedies are practicable. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982). Therefore, we conclude that the post-termination proceedings in this case which included a de novo review of the case in the district court, although procedurally adequate, did not cure the pretermination violation of Martin's right to procedural due process.

## V. CONCLUSION

In the case before us, Martin's due process rights were violated, because he was not provided a full explanation of DPI's evidence and an opportunity to rebut the evidence gathered during the investigation prior to being terminated from his employment. As a result, termination of Martin's employment was improper, because his employment was terminated without due process of law in violation of the U.S. and Nebraska Constitutions. The decision by the Board to terminate Martin's employment must be reversed, and Martin is to be reinstated effective the date of his dismissal. The district court is hereby ordered to enter such an order. Our decision does not prevent DPI from initiating disciplinary proceedings that comply with the requirements of due process.

REVERSED AND REMANDED WITH DIRECTIONS.