JUDITH TRACKWELL, APPELLANT, V.
NEBRASKA DEPARTMENT OF ADMINISTRATIVE SERVICES
AND THE STATE OF NEBRASKA, APPELLEES.
591 N.W. 2d 95

Filed March 23, 1999.   No. A-97-1171.

Dalton W. Tietjen, of Tietjen, Simon & Boyle, for appellant.

Don Stenberg, Attorney General, and Terri M. Weeks for appellees.

Irwin, Chief Judge, and Hannon and Sievers, Judges.

Irwin, Chief Judge.

## I. INTRODUCTION

Judith Trackwell appeals the judgment of the district court for Lancaster County affirming the decision of the Nebraska State Personnel Board (Board), which, in turn, upheld the decision of the Nebraska Department of Administrative Services (DAS) to terminate the employment of Trackwell. Trackwell claims on appeal to this court that the district court erred in assigning to her the burden of proof, in determining that DAS' decision to terminate her employment was made in good faith and for just cause, and in determining that progressive discipline need not be followed. For the reasons stated below, we reverse, and remand with directions.

## II. FACTUAL BACKGROUND

Trackwell was employed by DAS from 1988 to 1994 as a "Security Guard II." On October 31, 1994, Trackwell was terminated from her employment for unsatisfactory performance of her duties. The two incidents forming the basis for the termination of her employment occurred October 11 and 25, 1994. The parties stipulated at trial that as a Security Guard II, Trackwell was part of the State of Nebraska Protective Service Bargaining Unit and covered by the 1993-95 labor contract between the State of Nebraska and the Nebraska Association of Public Employees, Local 61, of the American Federation of State, County and Municipal Employees. Article 10, § 1, of the

above contract provides that the "[e]mployer shall not discipline an employee without just cause, recognizing and considering progressive discipline."

We generally describe Trackwell's duties and the incidents that formed the basis for the termination of her employment. The record shows that prior to an accident in 1993, Trackwell worked in the State Office Building and did a driving patrol of various other buildings. In 1993, Trackwell was injured in a job-related automobile accident. When she returned to work 6 months later, she was reassigned to work part time in the State Capitol in order to accommodate her physical condition. Her duties at the State Capitol included walking patrol, working in the tower of the building, and working in the security control center. Both October incidents occurred in the security control center.

The duties of a security officer working in the security control center include monitoring various state buildings through the use of electronic equipment such as radios, telephones, intercoms, alarm systems, video monitors, electronic door locks, and computers. Other duties include issuing keys to personnel and responding to the telephone. The record shows that Trackwell worked approximately 2½ to 3 hours per shift in the security control center but for no more than 1 hour at a time.

On October 11, 1994, Trackwell was working in the security control center, and her supervisor, Frank Holland, was in the dressing room changing into his uniform. Holland heard a loud, audible beep while in the dressing room. When he entered the security control center, Holland saw a red light indicating a "zone expander" alarm. A zone expander alarm is a panic alarm that is set off in the security control center when a button is pushed in a particular office. The alarm consists of a loud, audible beep that continues until silenced and a red light. A tag is attached to the various lights on the zone expander alarm system indicating the office from where the alarm has been activated. According to standard operating procedure, a security officer is supposed to read the tag to learn the location of the alarm and dispatch someone to that office.

When Holland entered the security control center, he saw Trackwell sitting. When asked where the alarm was, Trackwell

responded that the noise was coming from the computer disk drive under the desk. According to Trackwell, she was attempting to determine the nature of the alarm when Holland entered the room. Thereafter, Holland determined the location of the alarm and dispatched a person to that location.

On October 25, 1994, Trackwell and Holland were again working together in the security control center. At some point, Holland left to either lock doors or check windows. At 6:49 p.m., a fire alarm was triggered. The location of the fire was at the Department of Roads materials testing lab. When a fire alarm involves an external building, an audible alarm sounds in the security control center, which was described as being anywhere from a shrill whistle to a faint "'bloop.'" In addition, a dot matrix light is activated on a printer in the security control center, and a fire alarm text message is printed providing the location of the alarm and the procedure to be followed. Standard operating procedure for a fire alarm is for the security guard to identify the location of the alarm, call the 911 emergency service, call the individuals on the appropriate call list, send a security officer to the location of the alarm, and send a report to the agency people involved.

Although the fire alarm was triggered at 6:49 p.m., Trackwell did not notice the fire alarm until approximately 7:05 p.m. At that time, she saw the printed alarm message when performing a quarterly-hour check of the printers. She then attempted to call a person named "Bill Brolliar." According to Holland, Brolliar was an inappropriate person to call. At this point, Trackwell apparently was not aware that the alarm and printed message constituted a fire alarm. Holland then returned and looked at the fire alarm printout. The printout read: "DOR MTL-FIRE/A4-ALM ALARM FIRE ALARM — A4 BSMT MATERIAL TEST LAB ANNEX — CALL 911."

After Holland told Trackwell that it was a fire alarm and that she needed to call 911, Trackwell called 911. Without identifying herself or where she worked, she began to read the abbreviated fire alarm printout to the 911 operator. Through questions asked by the 911 operator and information given to her by Holland, Trackwell provided the appropriate information to the 911 operator. According to Holland, he then had to instruct

Trackwell on how to make the necessary calls using the appropriate call list. Trackwell subsequently prepared an abbreviated incident report, which did not comport with standard operating procedure.

### III. PROCEDURAL HISTORY

On October 31, 1994, Trackwell was dismissed from her employment due to unsatisfactory performance of her duties. Prior to dismissal, Trackwell was given written notice of the basis for the termination, an explanation of DAS' evidence, and an opportunity to present her side of the story. In dismissing Trackwell from her employment, DAS found that on October 25 at 6:49 p.m., Trackwell had failed to respond to a fire alarm at the Department of Roads material testing lab annex basement according to written policies and procedures and that on October 11, Trackwell failed to respond adequately to a zone expander alarm.

Trackwell filed a grievance challenging the termination of her employment. After her grievance was denied, Trackwell appealed to the Board. A hearing was conducted by a hearing officer on September 6, 1996. The record shows that DAS presented evidence first and bore the burden of proof. Numerous witnesses, including Trackwell, testified. After hearing the evidence, the hearing officer recommended to the Board that DAS' disciplinary action be upheld. The hearing officer concluded that DAS had proved by a preponderance of the evidence that on October 25, 1994, Trackwell unsatisfactorily performed her duties in responding to a fire alarm, despite appropriate training, in that she failed to read the printed message associated with the alarm, misunderstood the nature of the alarm, failed to follow the proper call list, failed to immediately contact 911, failed to properly communicate the necessary information to the 911 operator, and failed to prepare a proper report. The Board adopted the recommendation of the hearing officer. Thereafter, Trackwell timely filed a petition for review in the district court.

We note that the district court determined that Trackwell had the "burden of proving by a preponderance of the evidence that the agency's action was not taken in good faith and for just cause." After reviewing the evidence, the district court affirmed

the decision of the Board finding that Trackwell had failed to prove by a preponderance of the evidence that the termination of her employment was not done for just cause and in good faith. Thereafter, Trackwell timely appealed to this court.

## IV. ASSIGNMENTS OF ERROR

For her assignments of error, Trackwell contends that the district court erred in assigning to her the burden of proof, in finding that DAS' decision to terminate her employment was made in good faith and for just cause, and in concluding that progressive discipline "need not be followed under the terms of the labor agreement."

## V. ANALYSIS

### 1. STANDARD OF REVIEW

We initially set forth our standard of review. A final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Neb. Rev. Stat. § 84-918(3) (Reissue 1994); *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997); *Martin v. Nebraska Dept. of Public Institutions*, 7 Neb. App. 585, 584 N.W.2d 485 (1998). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Wolgamott, supra; Martin, supra.* When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *J.C. Penney Co. v. Balka*, 254 Neb. 521, 577 N.W.2d 283 (1998). See *Martindale v. Weir*, 254 Neb. 517, 577 N.W.2d 287 (1998).

### 2. DISTRICT COURT'S STANDARD OF REVIEW

Trackwell contends that the district court improperly assigned to her the burden of proving that DAS' action of terminating her employment was not taken in good faith and for just cause. In its order, the district court properly noted that appeals from the Board are to be taken under the Administrative Procedure Act, Neb. Rev. Stat. § 84-901 et seq. (Reissue 1994

& Cum. Supp. 1998), and that in such appeals, the district court reviews the case de novo, without a jury, on the record presented to the agency for petitions filed on or after July 1, 1989. § 84-917(5)(a). The court further indicated that in such a de novo review, the court must make independent factual findings without reference to the hearing officer's findings; however, when the evidence is in conflict, the district court may give weight to the fact that the hearing officer saw and heard the witnesses. However, the district court went on to state that Trackwell had the burden of proving by a preponderance of the evidence that the agency's action was not taken in good faith and for just cause. In assigning the burden of proof to Trackwell, the district court cited authority providing that a rebuttable presumption of validity attaches to the actions of administrative agencies and that the burden of proof rests with the party challenging the agency's action.

Therefore, we must determine whether the district court employed an appropriate standard of review. We initially note that in reviewing final administrative orders under the Administrative Procedure Act, the district court functions not as a trial court but as an intermediate court of appeals. See *Wolgamott, supra.* Judicial review of a contested decision of an agency, such as DAS, is controlled by the Administrative Procedure Act. See § 84-917(1). See, also, 273 Neb. Admin. Code ch. 14, § 010.01 (1993) (Nebraska Classified System Personnel Rules & Regulations). Section 84-917(5)(a) of the Administrative Procedure Act provides that for petitions for review filed on or after July 1, 1989, the review shall be conducted by the district court without a jury de novo on the record of the agency. The court may affirm, reverse, or modify the decision of the agency or remand the case for further proceedings. § 84-917(6)(b).

The Nebraska Supreme Court has held that pursuant to the above 1989 amendments to the Administrative Procedure Act, district courts are required to conduct "a true de novo review" of agency determinations. *Langvardt v. Horton*, 254 Neb. 878, 889, 581 N.W.2d 60, 67 (1998). See *Slack Nsg. Home v. Department of Soc. Servs.*, 247 Neb. 452, 528 N.W.2d 285 (1995). The court has further held:

Pursuant to the 1989 amendments to § 84-917, a district court is required to conduct a de novo review of agency determinations on the record of the agency. The district court is not limited to a review subject to the narrow criteria found in § 84-917(6)(a) but is required to make independent factual determinations based upon the record. The district court's decision is to be made independently of the agency's prior disposition. *Therefore, the district court is not required to give deference to the findings of fact by the agency hearing officer and to the decision of the director of the Department.*

(Emphasis supplied.) *Slack Nsg. Home*, 247 Neb. at 462, 528 N.W.2d at 293-94. See, also, *Langvardt, supra.*

We conclude that the presumption of validity cited by the district court in support of assigning the burden of proof to Trackwell is inapplicable to the present case. In two recent Nebraska Supreme Court cases involving the termination of employment or demotion of public employees, the court did not set forth or apply the above presumption of validity. See, *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53 (1997); *Rainbolt v. State*, 250 Neb. 567, 550 N.W.2d 341 (1996). In these cases, the court recognized that in the district court, the agency had the burden of proving that its decision to discipline an employee was made in good faith and for just cause. *Vinci, supra*; *Rainbolt, supra.* Our research reveals no Nebraska cases where the presumption of validity was applied in cases involving the termination of employment of a public employee. Our research shows that the presumption of validity was set forth, but not discussed, in cases involving a discharged employee's entitlement to unemployment compensation benefits, *Dillard Dept. Stores v. Polinsky*, 247 Neb. 821, 530 N.W.2d 637 (1995), and *Dolan v. Svitak*, 247 Neb. 410, 527 N.W.2d 621 (1995), and in cases involving the interpretation of agency regulations and an agency's discretionary powers, *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995); *In re Application of United Tel. Co.*, 230 Neb. 747, 433 N.W.2d 502 (1988); and *Haven Home, Inc. v. Department of Pub. Welfare*, 216 Neb. 731, 346 N.W.2d 225 (1984).

We conclude that the district court's argument is specious. Although the language regarding the presumption of validity has been used by the Supreme Court in some administrative agency appeals, it has never been applied in the context of a case involving the termination of employment of an agency employee as is the case before us. We take guidance from the Supreme Court in this regard given their decision to not apply such presumptive language to termination of employment cases. Also, the presumption of validity seems to be inconsistent with the notion of a true de novo review. In researching the background of the above presumption of validity, we found that it was adopted by the Nebraska Supreme Court from the federal courts. See *Haven Home, Inc., supra* (citing *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 388 (5th Cir. 1980)). *Alabama Nursing Home Ass'n*, in turn, cites *Udall v. Washington, Virginia and Maryland Coach Co.*, 398 F.2d 765 (D.C. Cir. 1968), as authority for the above presumption of validity. In *Udall*, the court explains that *where there is a judicial presumption of validity of administrative action which places the burden on the challenger to overcome that presumption, the "court should not seek to make a* de novo *determination . . . ."* (Emphasis supplied.) 398 F.2d at 769. As discussed above, in a true de novo review, the district court is not required to give any deference to the findings of the agency hearing officer or the department director. See, *Langvardt v. Horton*, 254 Neb. 878, 581 N.W.2d 60 (1998); *Slack Nsg. Home v. Department of Soc. Servs.*, 247 Neb. 452, 528 N.W.2d 285 (1995). In contrast, according to the presumption, a court is required to presume that the agency's action was correct unless the party challenging the agency's action presents evidence to rebut the presumption. See *Dillard Dept. Stores, supra*. This obviously flies in the face of the concept of de novo review.

For these reasons, we conclude that the presumption of validity does not apply in termination of employment cases such as the one before us. The district court erred in applying the presumption and, as a result, placing the burden of proof on Trackwell.

## VI. CONCLUSION

In summary, we conclude that the district court erred in determining that Trackwell had the burden of proving the impropriety of DAS' action. In its de novo review, the district court was required to determine whether DAS had met its burden of proving that its decision to terminate Trackwell's employment was made in good faith and for just cause. Because the district court in its de novo review improperly assigned the burden of proof, we cannot address Trackwell's remaining assigned errors because the standards of review of the district court and this court are interdependent. See *Bell Fed. Credit Union v. Christianson*, 237 Neb. 519, 466 N.W.2d 546 (1991). Therefore, we reverse, and remand and order the district court to make independent factual determinations based upon the record previously submitted, and such decision is to be made independently of the agency's prior disposition.

REVERSED AND REMANDED WITH DIRECTIONS.