**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KERRY WALLS,

*Plaintiff-Appellant,*

v.

CENTRAL CONTRA COSTA TRANSIT
AUTHORITY,

*Defendant-Appellee.*

No. 10-15967

D.C. No.
4:08-cv-00224-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
May 13, 2011—San Francisco, California

Filed August 3, 2011

Before: Betty B. Fletcher and Sidney R. Thomas,
Circuit Judges, and Lee H. Rosenthal, District Judge.*

Per Curiam Opinion

―――――――――――

*The Honorable Lee H. Rosenthal, District Judge for the U.S. District
Court for Southern Texas, Houston, sitting by designation.

**COUNSEL**

William James Flynn, Benjamin Kerl Lunch, Neyhart, Anderson, Flynn & Grosboll, San Francisco, California, for the plaintiff-appellant.

Mark Gabel, Patrick McPike Glenn, Molly Anne Lee, Hanson Bridgett LLP, San Francisco, California, for the defendant-appellee.

## OPINION

PER CURIAM:

Plaintiff-Appellant Kerry Walls ("Walls") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Central Contra Costa Transit Authority ("CCCTA"). Walls is a former bus driver for CCCTA. After being terminated on January 27, 2006, Walls was reinstated on March 2, 2006 pursuant to an agreement executed over the course of a grievance process between Walls, his union representative, and CCCTA ("Last Chance Agreement" or "Agreement"). On March 3, 2006, Walls incurred an unexcused absence that violated the attendance requirements of the Agreement. As a result, CCCTA again terminated Walls on March 6, 2006.

After grieving his termination, Walls brought this suit, claiming that his March 6 discharge violated the Family Medical Leave Act ("FMLA") and his due process right to a pre-termination hearing under the United States and California Constitutions. The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of CCCTA on both claims, reasoning that Walls was not an employee eligible for FMLA benefits when he requested leave, and that he had waived his due process rights. Walls timely appealed. Additional facts are noted where relevant.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse and remand in part.

## I.

A district court's grant of summary judgment is reviewed de novo. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053 (9th Cir. 2007) (citing *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004)). Federal Rule of Civil Procedure 56(a) provides that a movant is entitled to summary judgment where "there

is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In evaluating the evidence to determine whether there is a genuine issue of fact, we draw all inferences supported by the evidence in favor of the non-moving party. *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

## II.

### A.

**[1]** The FMLA entitles an "eligible employee" to twelve workweeks of leave for certain family and health-related situations. 29 U.S.C. § 2612. "The term 'eligible employee' means an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested . . . ." *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 780 (9th Cir. 2010) (citing 29 U.S.C. § 2611(2)(A)) (internal quotation marks omitted). Therefore, FMLA rights and benefits are contingent upon the existence of an employment relationship. *See Smith v. BellSouth Telecomm., Inc.*, 273 F.3d 1303, 1311 (11th Cir. 2001) (the right to FMLA leave "obviously cannot be exercised after the termination of an employment relationship").

**[2]** In order to establish an FMLA violation, the employee must demonstrate that the employer received sufficient notice of an employee's intent to take FMLA leave. *See Sanders v. City of Newport*, ___ F.3d ___, 2011 WL 905998, at *5 (9th Cir. Mar. 17, 2011). An employer that refuses to reinstate an employee who takes FMLA-protected leave unlawfully interferes with the employee's FMLA rights. *See id.* at *4-5.

Walls argues that his termination on March 6, based upon his March 3 absence, interfered with his FMLA rights because he was entitled to protected leave on the basis of a verbal request he made during a March 1, 2006 meeting with his union representative and CCCTA. Although the parties pro-

vide different accounts of Walls's communication with CCCTA at the March 1 meeting, they agree for purposes of summary judgment, that, at this meeting, Walls verbally requested to be absent from work until April 10. They also agree that Walls was not reinstated to his position until March 2, when he signed and executed the Last Chance Agreement. Therefore, he had not yet been reinstated to employment when he made his request for leave.

[3] Walls argues, however, that the Last Chance Agreement retroactively changed his status and rendered him an FMLA eligible employee on March 1. While Walls makes a novel legal argument, the facts of this case, and the terms of the Last Chance Agreement, do not support his position. As an undisputed matter of fact, Walls was no longer employed at CCCTA on March 1, the day he requested medical leave. The Last Chance Agreement says nothing of, and does nothing to change, Walls's status on this date. The Agreement states only that the period from January 20, 2006 to January 27, 2006 would be changed to an unpaid suspension; it does not expressly revoke the fact of Walls's termination on January 27. That Walls was reinstated to his previous level of seniority also does not change the fact that he was not employed at CCCTA on March 1, the day before his reinstatement. Therefore, we have no basis on which to conclude that the Agreement altered Walls's status on March 1 for purposes of the FMLA.

[4] Accordingly, even if a reinstatement agreement could, as a legal matter, retroactively change a former employee's status from terminated to "eligible employee" for purposes of the FMLA,[1] the terms of *this* Last Chance Agreement clearly do not have such effect. We agree with the district court that Walls was not an employee of CCCTA when he made his

---

[1]This novel question may have presented itself if, for example, the Agreement had indicated that the entire period from Walls's January termination to his March reinstatement was changed to an unpaid suspension.

request for leave and, therefore, cannot invoke FMLA protection on the basis of this request.

Walls additionally argues that, even if he was not an employee of CCCTA on March 1, CCCTA had actual knowledge during the period of Walls's employment from March 2 to March 6 of his need for FMLA leave, thereby excusing the requirement that he request such leave. Putting aside any legal deficiencies in this argument, we must reject its factual premise. The record reveals that, by making the informed decision to sign the Last Chance Agreement, Walls signaled to CCCTA that he was ready to start work under the terms of the Agreement, thereby retracting his request for leave. In addition, Walls attended a refresher training course on March 2, as he was required to do under the terms of the Agreement. This further indicated that he was in fact able to return to work. Upon Walls's reinstatement, therefore, CCCTA had no notice that Walls needed or intended to take medical leave.

[5] Because Walls was not an employee of CCCTA when he made his request for leave, we affirm the district court's grant of judgment for CCCTA on Walls's FMLA claim.

## B.

Walls also seeks relief under 42 U.S.C. § 1983 and the California Constitution, arguing that CCCTA denied him his right to due process by failing to give him a hearing before terminating him on March 6. Due process analysis involves a two-step process. We must determine first whether Walls had a protected property interest in his continued employment, and, second, whether Walls received all the process that was due. *Clements v. Airport Auth. of Washoe Cnty*, 69 F.3d 321, 331 (9th Cir. 1995).

## 1.

[6] Public employees who may be dismissed only for cause possess a property interest in their continued employment.

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985). CCCTA argues that the Last Chance Agreement effectively rendered Walls an at-will employee who was no longer entitled to due process protections.

**[7]** In California, at-will employees are those who can be fired with or without cause, subject only to limits imposed by public policy. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 665 (Cal. 1988). Here, the Last Chance Agreement specifies that certain events must in fact occur in order for Walls to be terminated. Nowhere does the Agreement expressly state that Walls was relegated to at-will employment status, nor does it allow CCCTA to terminate him without any cause. While the Last Chance Agreement specifies and modifies what constitutes "just cause" for purposes of Walls's termination, it does not otherwise alter the employment terms of Walls's collective bargaining agreement with CCCTA. Accordingly, there is no basis on which to conclude that he had become an at-will employee. Under the Agreement, Walls remained a public employee who could be fired only for cause, that is, an employee with a property interest in his continued employment. *See Loudermill*, 470 U.S. at 538-39.

**[8]** Having established that Walls had a protected property interest, we examine the process to which he was entitled. Due process requires that any deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). As the *Loudermill* Court explained, in cases of discharge from employment, "the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Loudermill*, 470 U.S. at 543. Therefore, a public employee with a property interest in his continued employment must be provided with "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id*. at 546. While the pre-termination hearing need

not be elaborate, the root of this requirement is that an individual have the opportunity to be heard *before* he is deprived of his property interest. *Id*. at 542.

**[9]** California law similarly recognizes a public employee's right to a pre-termination hearing. In *Skelly v. State Pers. Bd.*, 15 Cal. 3d 194, 215 (Cal. 1975), the Supreme Court of California held that "due process does mandate that the employee be accorded certain procedural rights before" being removed. At a minimum, these pre-removal safeguards must include "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." *Id.*; *see also Jones v. Omnitrans*, 125 Cal. App. 4th 273, 279-80 (Cal. Ct. App. 2004). *Skelly* expressly notes that post-removal safeguards alone do not satisfy due process requirements because they "do nothing to protect the employee who is wrongfully disciplined against the temporary deprivation of property to which he is subjected pending a hearing." 15 Cal. 3d at 215.

**[10]** It is undisputed that Walls did not receive a hearing before his termination on March 6. Notably, and despite the language in the Last Chance Agreement, CCCTA did allow the grievance process to go forward *after* Walls's March 6 termination. In light of *Loudermill*'s and *Skelly*'s emphasis on the importance of providing the employee with an opportunity to respond *before* he is terminated, however, these post-termination procedures alone cannot provide due process. *See Clements*, 69 F.3d at 332 ("In the context of process due a terminated public employee, a full post-deprivation hearing does not substitute for the *required pre-termination* hearing."). Therefore, this post-termination process, absent any pre-termination procedure, is insufficient to fulfill CCCTA's responsibility under the United States and California Constitutions.

**2.**

**[11]** The dispositive issue, then, is whether, in signing the Last Chance Agreement, Walls waived his right to a pre-termination hearing. A public employee may waive his right to due process. *Ostlund v. Bobb*, 825 F.2d 1371, 1373-74 (9th Cir. 1987); *Flippin v. L.A. City Bd. of Civil Service Comm'rs*, 148 Cal. App. 4th 272, 281 (Cal. Ct. App. 2007). Nonetheless, federal courts "indulge every reasonable presumption against waiver of fundamental constitutional rights" and "do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal citations and quotation marks omitted). Such a waiver should not be implied and should not be lightly found. *See Ostlund*, 825 F.2d at 1373. "Waiver of a constitutional right must be knowing and voluntary." *Id*. The presumption against waiver of constitutional rights applies equally in the criminal and civil contexts. *Gete v. I.N.S.*, 121 F.3d 1285, 1293 (9th Cir. 1997).

As Walls points out, the Last Chance Agreement contains no express waiver of a pre-termination hearing or of the right to due process pursuant to a termination decision. The Agreement does state that "[y]ou and your Union Representative may not grieve or arbitrate this matter if you fail to comply with these conditions." Since grievance and arbitration are post-termination processes, however, this clause does not conclusively waive Walls's rights to the pre-termination process of notice and the opportunity to respond.

**[12]** The district court held that Walls had waived his right to a post-termination hearing because the Last Chance Agreement concludes that "non-compliance with the stipulations [of the Last Chance Agreement] will result in your immediate and final termination." This text, however, is also insufficient to overcome the presumption against waiver of constitutional rights. First, it is not clear that the term "immediate," used in the context of an employment agreement, necessarily signals that the termination will take effect without a hearing or pro-

cess of any kind. We have found no federal or California precedent suggesting that the use of the word "immediate" alone serves to waive a public employee's due process rights. Second, and more important, it is certainly not clear that Walls knew and understood when he signed the Agreement that he was waiving his right to a pre-termination hearing. The record reflects that such a hearing was provided to him before his initial discharge on January 27, and the Agreement does not clearly provide that Walls would not be afforded the same procedure if terminated for non-compliance with the Last Chance Agreement's terms. Indeed, because the Agreement requires him to waive the *post*-termination grievance process, it is logical for Walls to have assumed that, absent an analogous waiver, he would be afforded *pre*-termination safeguards. Applying the presumption against the waiver of constitutional rights, we must conclude that Walls did not knowingly waive his right to due process protections. Because he received no pre-termination hearing, Walls was denied due process under the United States and California Constitutions.

## III.

**[13]** Consistent with the analysis above, we affirm the district court's grant of summary judgment for CCCTA on Walls's FMLA claim. We reverse the district court's grant of summary judgment for CCCTA on Walls's due process claims, and remand with instructions to grant judgment for Walls on these claims. We leave it to the district court to determine what remedy, if any, is appropriate.

**AFFIRMED   IN   PART,   REVERSED   AND REMANDED IN PART.**