Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

William White, appellee and cross-appellant,
v. Scott Busboom, appellant
and cross-appellee.

___ N.W.2d ___

Filed September 15, 2017.    No. S-16-377.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and give that party the benefit of all reasonable inferences deducible from the evidence.
3. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
4. **Constitutional Law.** The determination of constitutional requirements presents a question of law.
5. **Motions to Dismiss: Immunity: Appeal and Error.** An appellate court reviews de novo whether a party is entitled to dismissal of a claim based on federal or state immunity, drawing all reasonable inferences for the nonmoving party.
6. **Attorney Fees: Appeal and Error.** The award or denial of authorized attorney fees and the amount of a fee award are rulings that an appellate court reviews for abuse of discretion.
7. **Due Process.** Procedural due process claims require a two-step analysis: (1) whether the plaintiff has asserted a life, liberty, or property interest that is protected by the Due Process Clause and (2) whether the plaintiff was deprived of that interest without sufficient process.
8. **Public Officers and Employees: Employment Contracts.** An employment contract with a public employer can give rise to an objectively reasonable expectation of continued employment.

9. **Civil Rights: States.** The elements of, and defenses to, an action brought under 42 U.S.C. § 1983 (2012) are defined by federal law.

10. ____: ____. State courts are bound by definitive U.S. Supreme Court decisions or a consensus of federal court holdings on the substantive requirements of a claim or defense asserted under 42 U.S.C. § 1983 (2012).

11. **Public Officers and Employees: Immunity: Liability.** The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct, in the context of the specific facts at the time, does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

12. **Public Officers and Employees: Immunity.** Whether an official may prevail in his or her qualified immunity defense depends upon the objective reasonableness of his or her conduct as measured by reference to clearly established law.

13. ____: ____. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law.

14. **Judgments: Immunity.** A qualified immunity inquiry has two components: (1) whether a plaintiff has alleged a deprivation of a federal statutory or constitutional right and (2) whether that right was clearly established at the time of the alleged violation. A court has discretion to determine which component to address first.

15. **Public Officers and Employees: Due Process.** Due process requirements for depriving public employees of a protected property interest in employment must be determined under the balancing factors set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

16. ____: ____. A plaintiff fails to state a viable procedural due process claim when adequate postdeprivation state procedures were available but the plaintiff failed to invoke them.

17. **Federal Acts: Attorney Fees.** In order to be eligible for attorney fees under 42 U.S.C. § 1988(b) (2012), a plaintiff must be a prevailing party, which means that the plaintiff must have obtained a judgment on the merits, a consent decree, or some other judicially enforceable settlement, which materially alters the legal relationship of the parties in a way that benefits the plaintiff.

Appeal from the District Court for Johnson County: Daniel E. Bryan, Jr., Judge. Reversed and remanded with instructions.

Douglas J. Peterson, Attorney General, James D. Smith, and Jessica M. Forch for appellant.

Abby Osborn, of Shiffermiller Law Office, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

## I. NATURE OF CASE

The appellant, Scott Busboom, is an officer at the Tecumseh State Correctional Institution. The appellee, William White, is a former officer at the facility. White brought a civil rights action against the Department of Correctional Services (Department) and Busboom. He alleged that he was denied due process when he was placed on unpaid investigatory suspension without any opportunity to be heard. The district court granted the Department summary judgment, concluding that it was immune from suit under the doctrine of sovereign immunity. But it determined that Busboom was not entitled to qualified immunity in his individual capacity and that White was entitled to a judgment of liability against Busboom. The court concluded that Busboom had signed the letter suspending White while acting under the color of state law and that any reasonable officer in his position would have understood that White was entitled to a hearing before being deprived of a protected property interest.

We conclude that when White was suspended without pay, the law did not clearly establish that a public employer must first provide notice and an opportunity to respond to allegations of misconduct to an employee with a protected property interest in continued employment. As a result, we conclude that Busboom was entitled to qualified immunity. Additionally, we conclude that White has failed to show that he was deprived of due process because he did not receive a posttermination hearing. Accordingly, we reverse, and remand

with instructions for the court to enter summary judgment for
Busboom and dismiss White's complaint.

## II. BACKGROUND

### 1. Underlying Events

White began working for the Department at the Tecumseh
facility in 2008. A collective bargaining agreement (CBA) gov-
erned the terms of his employment.

In April 2010, White was arrested and accused of unlawful
intrusion. On April 26, White was charged with a Class III
misdemeanor for unlawful intrusion because the alleged victim
was over age 18.[1] The day after his arrest, White posted bail
and called Busboom about the arrest. Busboom was a major
at the facility, and his duties included reviewing documenta-
tion for disciplinary actions against the uniformed officers and
making recommendations to the deputy warden.

Christopher Connelly, a captain at the facility, was assigned
as the investigating officer for White's matter. On April 13,
2010, Connelly sent an email about White to Fred Britten, the
warden at the Tecumseh facility, and Brian Gage, the deputy
warden. Connelly informed them that White was charged with
a misdemeanor offense of "Invasion of Privacy" but that the
matter was still under investigation and that the Nebraska State
Patrol had seized his computer. Connelly recommended White
be suspended pending the outcome of the investigation.

Two hours later, Britten sent an email to the Department's
director and other persons, including Busboom. Britten stated
that he had discussed the matter with the deputy director and
that a decision had been made to suspend White without pay
pending an investigation into the circumstances of his arrest.

The same day, Busboom signed a letter placing White on
unpaid investigatory suspension:

> The Department . . . is placing you on investiga-
> tory suspension without pay, pending an investigation by

---

[1] See Neb. Rev. Stat. § 28-311.08 (Reissue 2008).

outside law enforcement. The Investigatory Suspension is in accordance with the current [CBA] section 10.3b.

While you are on the Investigatory Suspension, you are expected to be available in order for the agency to contact you. . . .

[Note: Article M.15.1, if applicable, permits the agency to place the employee on an unpaid suspension when employees are charged with a criminal offense that is directly related to the workplace and could reasonably be expected to result in a significant disruption of the workplace. For more details, see AR 112.06, Section III.B.3.b.3.]

Busboom later stated in an affidavit that he was told to inform White of his unpaid suspension, that he used a form letter, and that he did not make the decision to suspend White. In a deposition, Busboom also said that he signed the suspension letter only because he was the highest ranking official at the facility that day.

Section 10.3.b of the CBA, which was the cited authority in White's 2010 suspension letter, provides the following:

**Investigatory Suspension or Reassignment:** When the Employer determines that an employee must be removed from a current work assignment pending the completion of an investigation by the Employer to determine if disciplinary action is warranted, the Employer may:

a. reassign the employee . . . at their current rate of pay until the investigation is completed.

b. suspend the employee from work without pay for alleged violations involving a report or statement supporting the allegation of gross misconduct/negligence, or for actions which have brought the agency into non-compliance with governing state or federal laws/regulations, *until the investigation is completed or until six work days have elapsed, whichever occurs first. In all other instances, except those outlined above and those described in 10.3.c, the suspension shall be with pay.* The

investigation may continue after the suspended employee returns to a paid status. If the employee is found not to have committed the violations alleged, the employee will be granted pay, benefits, leave, and service credit for the period of suspension.

 c. in cases where the employee has been charged in court with a felony, which is directly related to the workplace or which has the potential for significant impact on, or disruption of, the workplace, the Employer may suspend the employee from work with or without pay until the charges are resolved.

 . . . .

 When the Employer has placed an employee on investigatory suspension, the Employer shall have thirty work days from the date of discovery of an infraction to initiate disciplinary action by serving a written notice of allegations on the employee except when the Employer is awaiting the results of an outside investigation. If no action is taken, disciplinary action is barred for that particular incident.

(Emphasis supplied.)

Section 10.9 of the CBA provides that "[i]n no case will an employee be charged with a disciplinary violation when the employee behavior it is based upon occurred more than one year prior to the initiation of the disciplinary process and has been known by the direct supervisor for more than one year."

White's 2010 suspension letter incorrectly referred to "Article M.15.1" of the CBA, which is irrelevant to this dispute. In its order, the court stated that the correct provision is article M.14.1, which, in relevant part, provides the following:

 When a Department . . . employee has been charged with a criminal offense *that is directly related to the workplace* which could reasonably be expected to result in a significant disruption of the workplace, the . . . Director, in consultation with the [Department's] Human Resources

> Administrator, may suspend the employee without pay
> until there is a trial court disposition of the criminal
> charges. A final disposition of the pending charges is
> not necessary prior to discipline, but may be considered
> by an arbitrator or hearing officer if a grievance is filed.
> The employee reserves the right to file a grievance on the
> Agency Director's decision to suspend.

(Emphasis supplied.)

On December 15, 2010, White filed a grievance regarding his unpaid suspension, but an arbitrator determined that it was not timely filed. On December 22, an officer reported to Connelly, Gage, Britten, and Busboom that White had called the facility to report that he had been charged with a third degree misdemeanor and was scheduled to go to court in January 2011. After a human resources assistant received this email, he asked Gage whether to continue White's suspension without pay or change it to suspension with pay. Gage responded that White's status with the Department had not changed.

Busboom testified that he never received any information that White had been charged with a felony offense. Busboom did not know of any actions that the Department took to investigate the charge against White or whether the charge was related to the workplace. The Department's only action was to have Connelly act as a liaison to the county attorney.

On March 28, 2011, the county attorney dismissed the charge against White without prejudice. But the Department did not reinstate him to his position. On March 30, Gage, the deputy warden, signed a new letter informing White that he was being placed on an unpaid investigatory suspension. Gage advised White that the Department was placing him on an "investigatory suspension without pay, pending an investigation for possible actions off the job which adversely affects the employee's performance and/or the employing agency's performance or function." Like the 2010 suspension letter, the 2011 suspension letter cited § 10.3 of the CBA as

authority for the suspension but did not set out any allegations of misconduct.

Busboom testified that White was placed on a new investigatory suspension so that the Department could perform an internal investigation. White testified that Busboom was the assigned investigator. White filed a timely grievance to the second suspension.

White was asked to come to the Tecumseh facility on May 5, 2011, to speak to the assigned investigator regarding his suspension. White did not attend. On June 2, the Department sent White a letter informing him that it was considering disciplinary action against him because he had failed to come in for questioning. The letter stated that he had violated three CBA provisions, which prohibited the following conduct: (1) violating or failing to comply with the CBA, state laws, executive orders, regulations, policies, or procedures; (2) failing or refusing to comply with a lawful order or proper assignment; and (3) acts or conduct that adversely affect the employee's or employer's performance. The only factual allegation was that White had failed to comply with the directive to meet with the assigned investigator. The letter stated that the Department's charges would be heard on June 14.

On June 14, 2011, a predisciplinary hearing was held without White's presence. White stated in an affidavit that he did not appear because he believed his efforts would be futile based on the Department's previous actions against him. On July 21, Britten wrote White that his employment was terminated as of that date because he failed to comply with the directive to meet with the investigator at the facility.

On August 26, 2011, an administrator with the state's employee relations division set aside White's second suspension because the Department had violated § 10.3 of the CBA in ordering it. It determined that the first suspension ended on March 28, 2011, and ordered the Department to pay White his wages and benefits from March 28, 2011, to his discharge date. The Department did not appeal that decision.

## 2. PROCEDURAL HISTORY

In his amended complaint, White named the State "through the NEBRASKA DEPARTMENT OF CORRECTIONS, and SCOTT BUSBOOM, Individually and in his official capacity." White alleged that he had a liberty interest in his good name and a property interest in his employment, which was taken from him without due process. He alleged that the Department and Busboom had violated his due process rights by terminating his employment and depriving him of an opportunity to work "based on the ruse of an investigation which never occurred." He alleged that in violation of his due process rights, he was denied any opportunity to be heard for over 1 year, causing him to suffer lost wages, past and future; emotional distress and humiliation; and damage to his personal and professional reputation. He sought damages, injunctive relief, and attorney fees.

The Department and Busboom moved to dismiss White's complaint for failing to state a cause of action. They alleged that Busboom was immune from suit under the doctrine of qualified immunity. The court sustained the motion to dismiss as to White's claim of reputational damage but overruled it as to his claim of a property interest in his employment. The Department and Busboom then filed an answer in which they alleged affirmative defenses, including immunity from suit. All parties then moved for summary judgment.

In its February 2015 order, the court dismissed the Department as a party under the doctrine of sovereign immunity. It also found that neither the Department nor Busboom had violated White's due process rights in terminating his employment in June 2011, because he had notice and an opportunity to be heard. But the court concluded that White had a protected property interest in his employment and that his first unpaid suspension from 2010 to 2011 violated both the CBA and state personnel rules. It determined that Busboom had signed the suspension order while acting under the color of state law and that any reasonable officer in his position would

have understood White was entitled to a hearing before being deprived of a protected property interest.

Factually, the court made the following determinations: (1) Busboom was involved in the disciplinary process and had been told to place White on an investigatory suspension; (2) the Department and Busboom learned on April 13, 2010, that White had been charged with misdemeanor invasion of privacy; (3) White was not charged with a felony; (4) Busboom admitted that no disciplinary actions were considered as a result of the April 2010 letter; (5) Busboom admitted that White was not suspended because of a criminal offense directly related to the workplace; and (6) Busboom admitted that after 6 days, § 10.3.b of the CBA required a paid suspension.

The Department and Busboom then moved the court to reconsider. They argued that White's claim against Busboom was barred because he failed to timely avail himself of the grievance procedures in article 4 of the CBA and that "[o]n this basis, Defendant Busboom is entitled to qualified immunity." The court denied the motion.

The court acknowledged that White had not filed a grievance until 8 months after his 2010 suspension took effect, which was determined to be untimely. It characterized the waiver cases relied upon by Busboom as decisions holding that a plaintiff had waived his due process right to a hearing by failing to request it. The court distinguished these cases because the employee had received some type of pretermination hearing. It concluded that those cases fell within the rule that a posttermination proceeding can correct any deficiencies in a pretermination proceeding. The court concluded that there was no postsuspension hearing that could have cured the failure to provide a presuspension hearing.

After a hearing, the court ordered Busboom to pay White $20,000 in lost wages and $15,000 in compensatory damages. White's attorney then applied for $25,901.27 in attorney fees and costs. The court reduced that request by half and

ordered Busboom to pay $12,731.25 in attorney fees and $438.77 in costs.

## III. ASSIGNMENTS OF ERROR

Busboom assigns that the court erred in failing to conclude that White had waived his due process claim, granting White summary judgment on his claim against Busboom in his individual capacity, and concluding that Busboom was not entitled to qualified immunity.

In White's cross-appeal, he assigns that the court erred in reducing the award of attorney fees.

## VI. STANDARD OF REVIEW

[1,2] We will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted and give that party the benefit of all reasonable inferences deducible from the evidence.[3]

[3,4] We independently review questions of law decided by a lower court,[4] and the determination of constitutional requirements presents a question of law.[5]

[5] We review de novo whether a party is entitled to dismissal of a claim based on federal or state immunity, drawing all reasonable inferences for the nonmoving party.[6]

---

[2] *Barnes v. American Standard Ins. Co. of Wis., ante* p. 331, ___ N.W.2d ___ (2017).

[3] *Id.*

[4] *Doe v. McCoy, ante* p. 321, ___ N.W.2d ___ (2017).

[5] *State v. Harris*, 296 Neb. 317, 893 N.W.2d 440 (2017).

[6] *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016).

[6] The award or denial of authorized attorney fees and the amount of a fee award are rulings that we review for abuse of discretion.[7]

## V. ANALYSIS

[7,8] The Due Process Clause of the 14th Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."[8] Procedural due process claims require a two-step analysis: (1) whether the plaintiff has asserted a life, liberty, or property interest that is protected by the Due Process Clause and (2) whether the plaintiff was deprived of that interest without sufficient process.[9] An employment contract with a public employer can give rise to an objectively reasonable expectation of continued employment.[10]

In the instant case, Busboom does not dispute that White had a protected property interest in his continued employment. Nonetheless, Busboom contends that under our holding in *Scott v. County of Richardson*,[11] White waived his procedural due process claim by failing to timely file a grievance after the 2010 suspension. Additionally, Busboom contends that under the U.S. Eighth Circuit Court of Appeals' precedent, White's failure to file a grievance under the CBA operates as a procedural bar to White's due process claim.

White responds that because the CBA's procedures did not comply with minimal due process requirements for an unpaid

---

[7] See, *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017); *Vlach v. Vlach*, 286 Neb. 141, 835 N.W.2d 72 (2013).

[8] U.S. Const. amend. XIV, § 1.

[9] See *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 280 Neb. 997, 792 N.W.2d 484 (2011), *disapproved on other grounds, State v. Boche*, 294 Neb. 912, 885 N.W.2d 523 (2016).

[10] See, *Scott v. County of Richardson*, 280 Neb. 694, 789 N.W.2d 44 (2010); 63C Am. Jur. 2d *Public Officers and Employees* § 136 (2009).

[11] *Scott, supra* note 10.

suspension, his failure to grieve his suspension cannot operate as a waiver of his due process rights. He argues that under the U.S. Supreme Court's precedent, postdeprivation procedures cannot cure the Department's failure to provide required predeprivation procedures or a prompt postsuspension hearing. And he argues that *Scott* is factually distinguishable.

In determining whether the availability of postdeprivation procedures satisfies due process requirements, courts have focused on two U.S. Supreme Court decisions regarding due process requirements for depriving a state employee of a protected property interest in his or her employment. We first explain those decisions.

In *Cleveland Board of Education v. Loudermill*,[12] the U.S. Supreme Court considered what pretermination process must be given to a tenured public employee who can be discharged only for cause. The Court concluded that Ohio's statutes, which provided that civil servants could not be discharged except for specified conduct, created a property interest in continued employment. It rejected the argument that the statutory procedures for discharging an employee defined the property interest. It held that a state "'may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'"[13] The Court held that due process required "'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment"[14] and set out the following requirements for that hearing:

> The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due

---

[12] *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

[13] *Id.*, 470 U.S. at 541 (citations omitted).

[14] *Id.*, 470 U.S. at 542.

process requirement. . . . The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.[15]

The Court emphasized that even if the underlying facts are clear, an employee's only meaningful opportunity to persuade an employer that a discharge is unnecessary or inappropriate is likely to be before the discharge.[16]

Finally, the court explained that its holding rested in part on Ohio's statutes that provided for a full posttermination hearing. It concluded that "all the process that is due is provided by a pretermination opportunity to respond, *coupled with* posttermination administrative procedures as provided by the Ohio statute."[17] Accordingly, the "pretermination hearing need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."[18] As stated, the pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story.[19] The Court further stated that if the employer perceives a hazard in keeping an employee on the job, it can suspend the employee with pay.[20]

Several years later, in *Gilbert v. Homar*,[21] the Court held that due process did not require a predeprivation hearing

---

[15] *Id.*, 470 U.S. at 546.

[16] See *Loudermill, supra* note 12.

[17] *Id.*, 470 U.S. at 547-48 (emphasis supplied).

[18] *Id.*, 470 U.S. at 545-46.

[19] *Loudermill, supra* note 12.

[20] *Id.*

[21] *Gilbert v. Homar*, 520 U.S. 924, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997).

before an employee charged with serious criminal offenses can be temporarily suspended without pay.

Richard Homar was a university police officer who was arrested in a drug raid while at a friend's house and charged with felony drug offenses. On the same day, the university suspended him without pay pending an investigation into the charges. The charges were dismissed a week later, but Homar remained on suspension. Almost 3 weeks after his arrest, two officials met with him so he could tell his side of the story, but they did not tell him that they had received a report that he made confessions on the day of his arrest. About a month after his arrest, the university informed him by letter that because he had confessed to associating with drug dealers and obtaining marijuana from one of them for his own use, it had demoted him to a groundskeeper position. The next day, Homar met with the university president. After allowing Homar to read the report and respond, the president sustained the demotion.

The Third Circuit concluded that Homar's unpaid suspension without notice and a presuspension hearing violated his due process rights. It relied on the Supreme Court's statement in *Loudermill* that the employer could suspend an employee with pay pending a pretermination hearing.

The Supreme Court assumed without deciding that due process protections extended to a disciplinary action "short of termination" against a tenured public employee.[22] But it stated that a paid suspension was not the only way to avoid a perceived hazard in leaving an employee on the job. The Court also recognized that on multiple occasions, it had "'rejected the proposition that [due process] *always* requires the State to provide a hearing prior to the initial deprivation of property.'"[23]

---

[22] See *id.*, 520 U.S. at 929.

[23] *Id.*, 520 U.S. at 930, citing *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).

In determining what process was constitutionally due Homar, the Court balanced the three distinct factors set out in *Mathews v. Eldridge*[24]: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest . . . ." In applying these balancing factors, the Court stated that although Homar had a significant interest in his paycheck, the length and finality of a deprivation must be considered and that Homar had faced only a temporary suspension without pay: "So long as the suspended employee receives a sufficiently prompt postsuspension hearing, the lost income is relatively insubstantial (compared with termination), and fringe benefits such as health and life insurance are often not affected at all . . . ."[25]

The Court concluded that the university had a significant interest in Homar's immediate suspension to maintain public confidence in its police force, because he had been charged with serious crimes and occupied a position of high public trust and visibility. In that circumstance, the state is not required to pay an employee whose services are no longer useful because he has been charged with a felony. Finally, the charges supported the university's conclusion that reasonable grounds existed to suspend Homar without providing a presuspension hearing.

But the Supreme Court agreed that once the charges were dropped, the risk of an erroneous deprivation increased substantially. Because the lower courts had not addressed whether the university violated Homar's due process rights by failing to provide a sufficiently prompt postsuspension hearing, the Court remanded for consideration of that issue.

---

[24] *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

[25] *Gilbert, supra* note 21, 520 U.S. at 932.

In *Scott*,[26] we held that deficiencies in due process during pretermination proceedings may be cured if the employee is provided adequate posttermination due process and that such measures can be provided by grievance procedures that have been agreed upon by the employer and the employee.

The plaintiff, James Scott, was a deputy sheriff who was placed on paid suspension for misconduct during an internal investigation. A week later, the chief deputy gave Scott a detailed report of the reasons for the suspension. A few days after that, Scott submitted to a polygraph test. The next day, the chief deputy discharged Scott after he refused to resign. At some point, Scott filed a grievance with the sheriff and appealed the sheriff's denial to the county board of commissioners. The board found just cause to terminate Scott's employment.

The district court overturned Scott's termination because the defendants had violated his predeprivation due process rights. It relied on *Martin v. Nebraska Dept. of Public Institutions*,[27] a Nebraska Court of Appeals decision holding that posttermination proceedings cannot cure a violation of a plaintiff's pretermination due process rights.

On appeal, we acknowledged that three federal courts of appeals had held that posttermination hearings will not normally cure a violation of pretermination due process rights.[28] But we agreed with the Eighth Circuit's decisions on this issue and held that "deficiencies in due process during pretermination proceedings may be cured if the employee is provided adequate posttermination due process."[29] We concluded that the grievance procedures under the labor agreement

---

[26] *Scott, supra* note 10.

[27] See *Martin v. Nebraska Dept. of Public Institutions*, 7 Neb. App. 585, 584 N.W.2d 485 (1998), *overruled, Scott, supra* note 10.

[28] See *Cotnoir v. University of Maine Systems*, 35 F.3d 6 (1st Cir. 1994); *Abraham v. Pekarski*, 728 F.2d 167 (3d Cir. 1984); and *Schultz v. Baumgart*, 738 F.2d 231 (7th Cir. 1984).

[29] *Scott, supra* note 10, 280 Neb. at 703-04, 789 N.W.2d at 52.

"process provides employees with due process required under *Loudermill*."[30]

We emphasized that the chief deputy had given Scott the factual allegations that supported the suspension and had given him an opportunity to respond to them. We did not dispute that the pretermination procedures violated Scott's due process rights but concluded that "the violation . . . was cured by the extensive posttermination hearing."[31]

However, since our holding in *Scott*, the Eighth Circuit has moved away from its earlier position that posttermination grievance procedures can cure violations of pretermination due process requirements.

The U.S. Supreme Court has consistently held that exhaustion of administrative remedies is not a prerequisite to filing an action under 42 U.S.C. § 1983 (2012),[32] absent a federal statute requiring such exhaustion.[33] However, in *Keating v. Nebraska Public Power Dist.*,[34] a 2009 case involving a water dispute, the Eighth Circuit stated that it had recognized an exception to the general rule that exhaustion of state remedies prior to bringing a § 1983 claim is not required. The court stated that "'[u]nder federal law, a litigant asserting a deprivation of *procedural due process* must exhaust state remedies before such an allegation states a claim under § 1983.'"[35] The court held, however, that it is not necessary for a litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation*

---

[30] *Id.* at 705, 789 N.W.2d at 53.

[31] See *id.* at 706, 789 N.W.2d at 53.

[32] See, *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988); *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982).

[33] See, e.g., 42 U.S.C. § 1997e (Supp. III 2015).

[34] *Keating v. Nebraska Public Power Dist.*, 562 F.3d 923 (8th Cir. 2009).

[35] *Id.* at 929 (emphasis in original), quoting *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016 (8th Cir. 2000).

process. It cited a U.S. Supreme Court holding that "'where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.'"[36] The court further noted that it had previously held the "'availability of post-deprivation remedies is not a defense to the denial of procedural due process where predeprivation process is practicable.'"[37] Accordingly, the court ruled that the appellants' failure to exhaust postdeprivation remedies did not affect their entitlement to predeprivation process and that the district court should not have considered this failure in dismissing the claim.

In 2012, the Eighth Circuit extended this reasoning in a case involving an Iowa teacher's discharge:

[W]e have held that a government employee who chooses not to pursue available post-termination remedies cannot later claim, via a § 1983 suit in federal court, that he was denied post-termination due process. . . . That said, we have also held that "it is not necessary for a litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation* process." . . . Thus, the effect of a government employee's failure to pursue available post-termination remedies depends on whether the employee alleges the deprivation of pre-termination process or post-termination process.[38]

The appellate court concluded that based on the plaintiff's failure to pursue posttermination process, the federal district court had properly dismissed his claims of deficient posttermination proceedings. However, the appellate court determined

---

[36] *Id.*, quoting *Zinermon v. Burch*, 494 U.S. 113, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990).

[37] *Id.*, quoting *Westborough Mall, Inc. v. City of Cape Girardeau*, 794 F.2d 330 (8th Cir. 1986).

[38] *Christiansen v. West Branch Community School Dist.*, 674 F.3d 927, 935-36 (8th Cir. 2012) (emphasis in original).

that his failure to exercise posttermination process had no effect on his claim that he was denied pretermination due process rights. As a result, the Eighth Circuit has implicitly acknowledged that where the Constitution demands predeprivation due process,[39] postdeprivation proceedings will not cure a state's failure to provide the minimum predeprivation process.

Importantly, the Eighth Circuit's 2012 decision is consistent with other federal court decisions addressing this issue in cases involving the discharge of a public employee with a protected property interest in employment.[40] Together, these decisions represent the consensus of lower federal appellate courts. Moreover, in *Loudermill* itself, the U.S. Supreme Court held that Ohio state employees were entitled to pretermination process despite the availability of extensive posttermination grievance procedures.[41] *Loudermill*'s minimum pretermination procedures are required even when posttermination grievance procedures are available.

[9,10] The elements of, and defenses to, a § 1983 action are defined by federal law.[42] State courts are bound by definitive U.S. Supreme Court decisions or a consensus of federal court holdings on the substantive requirements of a § 1983 claim or defense.[43] And the consensus of federal court holdings on this

---

[39] See *Zinermon, supra* note 36.

[40] See, *Jones v. City of Boston*, 752 F.3d 38 (1st Cir. 2014); *Carmody v. Board of Trustees of Uni. of Illinois*, 747 F.3d 470 (7th Cir. 2014); *Walls v. Central Contra Costa Transit Authority*, 653 F.3d 963 (9th Cir. 2011); *Montgomery v. City of Ardmore*, 365 F.3d 926 (10th Cir. 2004); *Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002).

[41] See *Loudermill, supra* note 12.

[42] *Howlett v. Rose*, 496 U.S. 356, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990).

[43] See, *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011); *Wilson v. Layne*, 526 U.S. 603, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999); *Howlett, supra* note 42; *Felder, supra* note 32; *Booker v. South Carolina Dept. of Corrections*, 855 F.3d 533 (4th Cir. 2017); *De La Rosa v. White*, 852 F.3d 740 (8th Cir. 2017); *Mammaro v. N.J. Div. of Child Prot. and Permanency*, 814 F.3d 164 (3d Cir. 2016).

issue is consistent with *Loudermill*. Upon the record before us, the Department did not provide White the minimum predeprivation due process required for a discharge under *Loudermill*, so we next consider whether that process clearly applied to White's claim that he was constructively discharged.

### 1. Court Erred in Determining That White's Predeprivation Due Process Rights Were Clearly Established

#### (a) Qualified Immunity Principles

[11,12] The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct, in the context of the specific facts at the time, does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[44] Whether an official may prevail in his or her qualified immunity defense depends upon the objective reasonableness of his or her conduct as measured by reference to clearly established law.[45]

[13] The U.S. Supreme Court has stated that it does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[46] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"[47]

---

[44] See, *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012); *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part on other grounds, Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014) (quoting *Ashcroft, supra* note 43).

[45] *Carney, supra* note 44.

[46] *Ashcroft, supra* note 43, 563 U.S. at 741.

[47] *Id.*, 563 U.S. at 743. Accord, *Messerschmidt, supra* note 44; *Potter v. Board of Regents*, 287 Neb. 732, 844 N.W.2d 741 (2014) (citing *Messerschmidt, supra* note 44).

[14] A qualified immunity inquiry has two components: (1) whether a plaintiff has alleged a deprivation of a federal statutory or constitutional right and (2) whether that right was clearly established at the time of the alleged violation.[48] A court has discretion to determine which component to address first.[49]

(b) Law Has Not Clearly Established
Employee's Due Process Rights
for Constructive Discharge

Although White was not actually discharged until after the second suspension, he argues that Busboom's actions amounted to a constructive discharge. He contends that a procedural due process violation can rest on a constructive discharge. In support of this contention, White relies on an unpublished federal district court's judgment.[50]

In *Hammond v. Chester Upland School Dist.*,[51] the defendant school superintendent did not give the plaintiff school principal a reason for suspending her without pay until he was contacted by her attorney. The next month, the superintendent indicated that she would not be reinstated as principal and advertised her position as open. She refused the school board's offer of a teaching position, and the defendants did not offer her a hearing on her continued unpaid suspension until more than 5 months after its effective date and did not affirm the suspension until nearly 2 years later. The federal district court concluded that the suspension was a de facto termination and that she was entitled to pretermination due process under *Loudermill*, which had not occurred.

The Seventh Circuit has also recognized that sham investigative procedures, which deprive a tenured public employee

---

[48] *Ashcroft, supra* note 43.

[49] See, *id.*; *Pearson, supra* note 44.

[50] See *Hammond v. Chester Upland School Dist.*, No. Civ. A. 13-6209, 2014 WL 4473726 (E.D. Pa. Sept. 9, 2014) (unpublished decision).

[51] *Id.*

of an adequate opportunity to respond to allegations of misconduct, coupled with an extensive suspension, can constitute a due process violation.[52]

But other courts have acknowledged the difficulty of extending the predeprivation requirements of *Loudermill* to a constructive discharge:

A constructive discharge differs in essential ways from a true discharge. When an employer decides to fire an employee, there is no ambiguity about the loss that the employee will suffer. If the employee has a property interest in the job, the government employer must provide proper notice and a hearing before the firing is effected. . . . In the constructive-discharge context, however, the employer may not even know that its actions have compelled the employee to quit. When that is the case, the employer can hardly be required to provide notice or a hearing before the resignation . . . .[53]

The Fifth and the Ninth Circuits have similarly reasoned that in an actual discharge case, if an employer failed to provide minimum predeprivation due process, it clearly ignored those due process requirements, whereas an employer may not be on notice that it should provide predeprivation due process procedures in a constructive discharge case.[54]

Accordingly, the Fifth Circuit has held that a constructive discharge can support a viable § 1983 claim only if it amounted to a forced discharge to avoid providing pretermination hearing procedures.[55] The 10th Circuit requires a plaintiff employee to show that (1) the employer intentionally or knowingly created intolerable working conditions, or was at least on notice of those conditions; (2) such conditions compelled the

---

[52] See *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998).

[53] *Lauck v. Campbell County*, 627 F.3d 805, 812 (10th Cir. 2010).

[54] See, *Fowler v. Carrollton Public Library*, 799 F.2d 976 (5th Cir. 1986); *Gravitt v. Brown*, 74 F. Appx. 700 (9th Cir. 2003).

[55] *Fowler, supra* note 54.

plaintiff's resignation; and (3) the employer failed to provide minimum pretermination procedures.[56]

[15] *Loudermill* and *Gilbert*[57] established that the due process requirements for depriving public employees of a protected property interest in employment must be determined under the *Mathews* balancing factors.[58] But we need not decide whether these facts show a constructive discharge or what due process requires in a constructive discharge case. It is enough here to conclude that White's due process rights in the context of a constructive discharge claim were not clearly established at the time that the Department placed White on an unpaid suspension. This is particularly true in light of our decision in *Scott*,[59] which implied that posttermination grievance procedures could provide all the due process that was required under *Loudermill*, even in cases involving an actual discharge.[60]

### (c) Law Has Not Clearly Established Employee's Predeprivation Due Process Rights for Unpaid Suspension

The holding in *Loudermill* was limited to setting out the minimum due process requirements before discharging an employee with a protected property interest in employment. As noted, in *Gilbert*, the Supreme Court did not decide whether procedural due process protections extend to adverse employment actions short of a discharge.[61] It held only that under the facts of the case, due process did *not* prohibit an unpaid suspension without predeprivation procedures.

---

[56] *Lauck, supra* note 53.

[57] See *Loudermill, supra* note 12, and *Gilbert, supra* note 21.

[58] See *Mathews, supra* note 24.

[59] *Scott, supra* note 10.

[60] See *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

[61] See *Gilbert, supra* note 21.

In 2011, the Third Circuit applied the *Mathews* factors and held that absent extraordinary circumstances, due process requires notice and an informal hearing before suspending a state employee without pay if the employee has a protected property interest in employment, even if postsuspension grievance procedures are available. But the court also held that this right was not clearly established when the plaintiff was suspended.[62] Two other federal appellate courts have also held that a state employer must provide at least some type of predeprivation process before imposing an unpaid suspension.[63]

In contrast, the 10th Circuit held that a school board's placement of an administrator on unpaid leave without any type of hearing did not violate his due process rights.[64] Applying the *Mathews* factors, the court specifically held that the plaintiff was not constitutionally entitled to notice and opportunity to respond before he was suspended without pay. The court stated that his private interest in continuous income was attenuated by the relatively prompt postsuspension grievance procedure that was available to him, even though the administrator did not file a grievance. In effect, the court held that in unpaid suspension cases, an employee forfeits a predeprivation due process claim by failing to invoke postdeprivation procedures that were available. In a footnote, the Sixth Circuit stated that even if the administrator were entitled to a presuspension hearing, that right was not clearly established when the district suspended him.[65]

Given this conflicting federal case law and a statement by two federal appellate courts that the right to predeprivation notice and a hearing was not clearly established in unpaid

---

[62] See *Schmidt v. Creedon*, 639 F.3d 587 (3d Cir. 2011).

[63] See, *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005); *Baerwald v. City of Milwaukee*, 131 F.3d 681 (7th Cir. 1997).

[64] *Kirkland v. St. Vrain Valley Sch. Dist. No. RE-1J*, 464 F.3d 1182 (10th Cir. 2006).

[65] See *id.* at 1194 n.10.

suspension cases, we cannot say that Busboom should have known that White was entitled to notice and an informal hearing before he was suspended without pay. We conclude that the court erred in reasoning that any reasonable officer in Busboom's position should have understood that notice and an opportunity to be heard were required before the Department could deprive White of a protected property interest. That level of generality was too high to determine whether the unlawfulness of the suspension was apparent.[66] The question was whether, at the time of Busboom's actions, the law clearly established that White was entitled to notice and a predeprivation hearing to respond to the Department's allegations, despite the availability of prompt postdeprivation grievance procedures to challenge his unpaid suspension. We conclude that it did not. Accordingly, the court erred in failing to determine that Busboom was entitled to qualified immunity on White's claim that he was denied predeprivation due process.

## 2. White Has Failed to Show Postdeprivation Due Process Violation

White also contends that his failure to file a grievance within the allowable time did not waive his postdeprivation due process. More specifically, he alleges that the grievance procedures did not comply with due process requirements because the CBA failed to specify the time for a postsuspension hearing.

In support of this contention, he relies on the U.S. Supreme Court case of *Barry v. Barchi*,[67] in which the Court held that a horseracing board's suspension of a trainer was unconstitutional for the same failure. In *Barry*, the board suspended the trainer for 15 days after one of his horses tested positive for drugs. Under the applicable statute, it was presumed, subject to rebuttal, that the drug either was administered by the

---

[66] See *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

[67] *Barry v. Barchi*, 443 U.S. 55, 99 S. Ct. 2642, 61 L. Ed. 2d 365 (1979).

trainer or resulted from his negligence in failing to adequately protect against such occurrence. After the suspension, the trainer would be entitled to a hearing; however, the statute did not specify a time for such a hearing and granted the board up to 30 days after the hearing to issue a final order.

The trainer did not seek a hearing under the statute, but instead filed suit and challenged the law. The federal district court found that even a short suspension could irreparably damage a trainer's livelihood and that during that period, a trainer would lose clients to other trainers. It concluded that a full hearing after he had lost his clients was not a meaningful opportunity to be heard.[68] It ruled that the statute violated the trainer's due process rights because it allowed the sanction without a presuspension or a prompt postsuspension hearing.[69]

The Supreme Court agreed that the board was entitled to impose an interim suspension, pending a prompt judicial or administrative hearing that would definitely determine the issues, whenever it has satisfactorily established probable cause to believe that a horse has been drugged and that a trainer has been at least negligent in connection with the drugging.

Nonetheless, the Court noted that the statute, on its face and as applied, did not provide for a prompt hearing. So trainers would often not have an opportunity to test the state's evidence before they had suffered the full consequences of a suspension. The Court reasoned that this result did not satisfy the due process requirement of an opportunity to be heard on the ultimate determination "'at a meaningful time and in a meaningful manner.'"[70] Because the statute was deficient in that respect, the Court held that the trainer's suspension was constitutionally infirm under the Due Process Clause.

But *Barry* is distinguishable not only because the state procedures gave the trainer no opportunity to contest the sanction

---

[68] *Id.*

[69] *Id.*

[70] *Id.*, 443 U.S. at 66.

until after it was completed, but because the sanction irreparably affected the trainer's future livelihood by causing him to lose clients.

In contrast, in *FDIC v. Mallen*,[71] the Supreme Court upheld the administrative postdeprivation procedures for a bank president to contest his suspension where the agency was required to hold a hearing within 30 days of a claimant's request and to issue a decision within 60 days of the hearing. The Court concluded that this 90-day period did not exceed permissible limits. It emphasized that leaving the suspension in place would not increase the plaintiff's reputational injury, because he had been indicted of a felony crime of dishonesty, and that the public interest in a correct decision counseled against requiring a hasty one. The Court stated that the indictment demonstrated that the suspension was not arbitrary and raised a public concern that the bank was not being managed responsibly.

In *Zinermon v. Burch*,[72] the U.S. Supreme Court explained that when a plaintiff in a § 1983 action alleges a procedural due process violation, the existence of state remedies is a relevant consideration:

> In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*. . . . The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the

---

[71] *FDIC v. Mallen*, 486 U.S. 230, 108 S. Ct. 1780, 100 L. Ed. 2d 265 (1988).

[72] *Zinermon, supra* note 36, 494 U.S. at 125-26 (emphasis in original).

deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

[16] Consistent with *Zinermon*, lower federal appellate courts have concluded that a plaintiff fails to state a viable procedural due process claim when adequate postdeprivation state procedures were available but the plaintiff failed to invoke them.[73] We agree. These holdings are not an exception to the no exhaustion requirement.[74] Instead, a plaintiff cannot show a procedural due process violation if the governmental actor provided an adequate postdeprivation procedure and the plaintiff failed to invoke the remedy.[75]

The CBA in this matter permits an employee to file a grievance for a violation of the labor contract within 15 days of the contested action, unless the employer exercises its discretion to extend the time limit. The decisionmaker who took the action must confer with the employee and respond to the grievance within 10 days. If dissatisfied with the response, an employee can appeal to the agency head, who must respond within 15 days of the appeal. If instead, the agency head was the decisionmaker, he or she must respond to the grievance in 15 days. After that, an employee can appeal to the state's employee relations division, which must issue a decision within 20 days of a conference between the parties. An employee can appeal that decision to an arbitrator or hearing officer. And employees can additionally seek judicial review.[76]

---

[73] See, e.g., *Raymond v. Bd. of Regents of the University of MN*, 847 F.3d 585 (8th Cir. 2017); *Christiansen, supra* note 38; *Kirkland, supra* note 64; *Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000); *Chiles v. Morgan*, No. 94-10980, 1995 WL 295931 (5th Cir. Apr. 26, 1995) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 53 F.3d 1281 (5th Cir. 1995)).

[74] See *Alvin, supra* note 73.

[75] *Id.*

[76] See *Ahmann v. Nebraska Dept. of Corr. Servs.*, 278 Neb. 29, 767 N.W.2d 104 (2009).

Here, the Department knew that White had been arrested for a misdemeanor offense of unlawful intrusion, not a felony offense. But regardless of whether the decision to suspend White without pay was correct, we conclude that under *Mallen*, the postdeprivation procedures available to White were constitutionally adequate. His failure to invoke them does not render his unpaid suspension an unlawful deprivation of a protected property interest without due process. We conclude that he has failed to show a postdeprivation due process violation.

### 3. WHITE IS NOT ENTITLED TO ATTORNEY FEES

[17] In order to be eligible for attorney fees under 42 U.S.C. § 1988(b) (2012), a plaintiff must be a prevailing party, which means that the plaintiff must have obtained a judgment on the merits, a consent decree, or some other judicially enforceable settlement, which materially alters the legal relationship of the parties in a way that benefits the plaintiff.[77] We have determined that Busboom was entitled to qualified immunity on White's claim that he was deprived of predeprivation due process and that White has failed to show a postdeprivation due process violation. Accordingly, White is not entitled to attorney fees, because he is not a prevailing party.

## VI. CONCLUSION

We conclude that the court erred in determining that any reasonable officer in Busboom's position should have understood that notice and an opportunity to be heard were required before the Department could deprive White of a protected property interest. Federal case law has not clearly established

---

[77] See, *Lefemine v. Wideman*, 568 U.S. 1, 133 S. Ct. 9, 184 L. Ed. 2d 313 (2012); *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

that in unpaid suspension cases, a public employer must provide predeprivation notice and a hearing to an employee with a protected property interest in employment. Nor has federal case law clearly established that these due process rights are available in constructive discharge cases.

Moreover, when White was suspended, the controlling authority of both the Eighth Circuit and this court established that a state official's failure to provide pretermination due process could be cured by posttermination grievance procedures. A prison official in Busboom's position could have reasonably concluded that the same rule applied to the lesser disciplinary action of an unpaid suspension. Accordingly, the court erred in failing to sustain Busboom's qualified immunity defense.

Additionally, we conclude that White has failed to state a viable § 1983 claim that he was denied posttermination due process because he failed to invoke the grievance procedures that were available to him. Because White is not a prevailing party, he is not entitled to attorney fees. We therefore reverse the district court's judgment and remand the cause with instructions for it to enter summary judgment for Busboom and dismiss White's complaint.

REVERSED AND REMANDED WITH INSTRUCTIONS.